## 49225. MAYS v. CITIZENS & SOUTHERN NATIONAL BANK.

PANNELL, Presiding Judge.

Appellant entered into a lease agreement on May 1, 1971, with S & S Sales of Florida, Inc., whereby appellant agreed to lease a 1971 Cadillac sedan for a set monthly sum for 24 months. The rentals under the lease, subsequently, were assigned to the appellee bank by an undated assignment which the evidence shows to be either September 28, 1971, or October 1, 1971. The defendant was notified of the assignment and began making payments to the bank. Commencing in November, 1972, appellant made no further rental payments to the bank, leaving 5 months unpaid on the lease. The automobile was surrendered to the bank, which incurred some repair bills on the automobile. Suit was brought by the bank to recover the payments in arrears, the cost of repair and attorney fees as provided for in the contract. The defendant answered, admitted the payments were past due, and admitted the allegation as to the repairs and the notice of attorney fees, but claimed that the plaintiff bank was not a bona fide holder for value, that defendant was only liable for the repairs occasioned by ordinary wear and tear, but was not liable for any repairs made to make the automobile suitable for the use intended. The answer also contained what was denominated a cross claim; that the plaintiff was indebted to defendant in the amount of $2,500, and also sought $1,000 punitive damages. The defendant made a motion to dismiss the plaintiff's complaint on the ground that it failed to state a claim upon which relief could be

granted and attached thereto her affidavit to be used in support of her motion to dismiss and in rebuttal of plaintiff's motion for a partial summary judgment. This affidavit contained considerable conclusions of fact; she also in this affidavit denied the existence of S & S Sales of Florida, Inc. at the time the contract was entered into and attempted to prove her counterclaim by stating "that the vehicle in question was not fit for the use for which it was rented and was defective at the time of purchase; moreover deponent did not rent said vehicle as is." The plaintiff made a motion for partial summary judgment on the following grounds: "1. That there is no issue as to any material fact and that it is entitled to judgment as a matter of law *on the issue of the monthly instalments in default,* said instalments totaling the sum of $1,287.50. 2. That there is no issue as to any material fact and that it is entitled to judgment as a matter of law *on the issue of the repairs performed on the vehicle* by plaintiff, said repairs totaling $286.60," attaching the affidavit of an officer of the plaintiff in proof thereof, together with a certified copy of Florida records showing that Tom Norton S & S Sales of Florida, Inc., was organized on May 1, 1970, and was dissolved on July 11, 1972, for failure to pay its capital stocks tax. There was no proof that S & S Sales of Florida, Inc. was not in existence. The trial judge overruled the defendant's motion for partial summary judgment, leaving other issues undisposed of by the order continued for later disposition. Subsequently, the plaintiff made a motion for partial summary judgment on the grounds: "That there is no issue as to any material fact and that it is entitled to judgment as a matter of law *on the issue of attorney's fees, said attorney's fees to be set by the court as provided by law.*" On the hearing thereon, the trial judge entered an order vacating his former order and again overruling the motion to dismiss the complaint and entered an order granting a partial judgment "on the issue" of attorney fees; and further entered the following order: "Whereupon, it is considered, ordered and adjudged, that the plaintiff, Citizens and Southern National Bank of Georgia do have and recover against the defendant, Carrie J. Mays, Individually, and doing business as Mays

Funeral Home, the sum of $1,574.10, plus attorney's fees in the amount of $153.75, plus interest at the rate of 7% per annum from date." No provision was made therein for the disposition of the "cross claim" of the defendant. The defendant appeals to this court from this order. *Held:*

1. The defendant appellant, by presenting her affidavit in support of her motion to dismiss the plaintiff bank's complaint, converted her motion to dismiss into a motion for summary judgment. The defendant in her answer admitted the execution of the lease agreement and the nonpayment of the rentals claimed. There was no dispute as to the amount of the repairs or the right to attorney fees in the event of a recovery by plaintiff, nor was there proof of any alleged defenses other than that relating to breach of warranty, which under the terms of the lease agreement were not available to defendant as shown in Division 3 of this opinion. There was no error in overruling the motion to dismiss the complaint.

2. Paragraph (d) of Section 56 of the Civil Practice Act (Ga. L. 1966, pp. 609, 660; Code Ann. § 81A-156 (d)) reads: "If on motion under this section judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall, if practicable, ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly." Section 16 and Section 56 of our Civil Practice Act is patterned after and similar to Rules 16 and 56 of the Federal Rules of Civil Procedure, and we might look to construction of these rules as helpful in the present case. "The objective of Rule 16 on pre-trial procedure and the formulation of issues is to facilitate the actual trial of issues by eliminating beforehand those which are not really disputed and

leaving only the disputed issues for trial. The general purpose of Rule 56 is to dispense with a trial. While Rules 16 and 56 complement one another, each serves its own special purpose. The use of Rule 16 is discretionary with the district court. The right to invoke Rule 56 is, however, vested in a party. Accordingly, a party should not through the technique of a partial summary judgment force the court to pre-try the case where, or pre-try it in a manner, not consonant with its practice. Nevertheless, on a motion for summary judgment, it may be apparent that certain issues are not in dispute, but that others are, and consequently the court may be unable to adjudicate the case fully on the motion. When a case is not fully adjudicated on a motion for summary judgment the issues should be simplified and, accordingly, an express provision was inserted in Rule 56 (d) requiring the court, if practicable, to simplify and narrow the issues for actual trial when the case is not fully adjudicated." 6 Moore's Federal Practice (2d Ed.), p. 2037, § 56.02 [5]. The Federal Advisory Committee notes, in reference to paragraph (d) of Federal Rule 56 state: "Subdivision (d) of Rule 56 indicates clearly, however, that a partial summary 'judgment' is not a final judgment, and therefore, that it is not appealable, unless in a particular case some statute allows an appeal from the interlocutory order involved. [Note: an appeal from such an order is permissible in Georgia solely by reason of statute.] The partial summary judgment is merely a pre-trial adjudication that certain issues shall be deemed to be established for the trial of the case. This adjudication is more nearly akin to the preliminary order Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact. See, Leonard v. Socony-Vacuum Oil Co., 130 F2d 535; Biggins v. Oltmer Iron Works, 154 F2d 214; 3 Moore's Federal Practice (1938) 3190-3192." Id., pp. 2016-2017, § 56.01 [7].

It will be noted that the motions for partial summary judgment sought an adjudication on the three issues involved in the motions; that is, that there was no issue as to the number and amount of the instalments past due, there was no issue as to the amount of repairs, and

there was no issue as to the right of attorney fees if recovery be had by the plaintiff.

Because there was a cross claim pending at the time the motions were filed, seeking recovery of sums in excess of the amount sought by plaintiff, and plaintiff in its motion sought no adjudication thereof, it would appear that plaintiff's partial motion for summary judgment sought an interlocutory adjudication under Par. (d) of Section 56 of the Civil Practice Act. While it is permissible for a trial judge under Par. (d) of Section 56 of the CPA (Code Ann. § 81A-156) to adjudicate temporarily the lack of issues until a final judgment in the case, the trial judge, in his order here, went much further.

(a) He adjudicated the amount of attorney fees. A recovery of attorney fees by a plaintiff in a case where there is a cross claim, or counterclaim, is governed by the amount of the plaintiff's recovery over and above any recovery on the cross claim or counterclaim. See *Livingston Bros. v. Salter,* 6 Ga. App. 377 (1, 2) (65 SE 60); *Rylee v. Bank of Statham,* 7 Ga. App. 489, 498 (67 SE 383).

(b) But the crucial error is, that after adjudicating there was no dispute on these issues, the trial court then went further and entered a final judgment: "Whereupon it is considered, ordered and adjudged, that the plaintiff, Citizens and Southern National Bank of Georgia do have and recover against the defendant, Carrie J. Mays, Individually, and doing business as Mays Funeral Home, the sum of $1,574.10, plus interest at the rate of 7% per annum from date." In doing so he erred, because the recovery of plaintiff could be lessened by a recovery by the defendant on the counterclaim, or if the amount of the counterclaim recovery be sufficient, even secure a recovery against the plaintiff over and above the amount of the plaintiff's claim; unless of course for some other reason the trial judge must be affirmed. The case of *Doyal v. Ben O'Callaghan Co.,* 132 Ga. App. 336, in which four judges agreed that the grant of a partial summary judgment similar to what was done here, was correct under the facts of that case, is not binding authority; and further, the present case is distinguishable because (1) the trial judge in the *Doyal* case left the counterclaim

pending to be later adjudicated, and (2) no final judgment was entered upon which an execution could issue.

3. However, the above error here was harmless as the record shows the alleged counterclaim of defendant did not legally exist. The defendant in support of her motion to dismiss the complaint, and also as counter-evidence in plaintiff's motions for partial summary judgment, presented her affidavit injecting the issue of the defects in the automobile under the apparent theory of breach of warranty. Her answers to interrogatories showed that her counterclaim indicated defective paint upon delivery, defective exhaust system, defective motor mounts, substantial rattling when operated, leakage problems, defective motor, vehicle had valve tap, vehicle then threw rod during last month it was in defendant's possession, $2,000 in repairs, inconvienence and loss of business, and depreciation on other vehicles which had to be used because vehicle in question was defective.

If, under the enforceable terms of the contract, *no such defense existed,* then the trial judge was correct for this reason in entering final judgment for principal, interest and attorney fees in favor of the plaintiff. We are not here concerned with whether a waiver of defenses as against the plaintiff assignee contained in the lease contract is valid or not (see *S. M. & M. Realty Corp. v. Highlands Ins. Co.,* 123 Ga. App. 170 (179 SE2d 781)), as in our view of the case, any claim against the lessor owner for breach of warranty as a defense to the action by the assignee bank is precluded by other terms of the contract.

Paragraph 3 (b) of the lease provides: "The Lessee shall pay all costs, expenses, fees and charges incurred in connection with the use and operation of the equipment during the lease term thereof. The owner hereby assigns to the lessee for the term of this lease all of its interest in any manufacturer's or vendor's warranty or guaranty, expressed or implied, in respect of the equipment and agrees to execute and deliver such further instruments and to do such further acts as may be necessary to enable the lessee to obtain customary warranty or guaranty service furnished for the equipment by the manufacturer or vendor. Lessee agrees to comply with all of manufacturer's or vendor's

requirements to keep such warranties or guaranties in good standing."

Paragraph 7 of the contract reads as follows: "The lessee will indemnify and keep harmless the owner, or its agents, servants, and assigns *from and against any and all losses, damages, injuries, claims, demands and expenses, including legal expenses of whatsoever kind and nature arising on account of the use, condition (including without limitation latent and other defects and whether or not discoverable by owner), or operation of the equipment or any part thereof,* and by whomsoever used or operated, and the installation or removal of any unit of equipment pursuant to any provision of this lease."

Paragraph 8 of the lease reads as follows: "Lessee shall bear the risk of damage, loss, theft, or destruction, partial or complete, of any unit of equipment subject to the terms of this lease from whatsoever source arising, *including but not limited to loss of profits,* consequential damage, inconvenience, or loss of use for any period of time. Any and all replacements, repairs, or substitutions of parts of any unit of equipment thereof shall be at the cost and expense of the lessee and shall constitute accessions to such unit of equipment and title thereto shall vest and remain in the owner. Lessee shall at all times, at its own expense, keep each unit of equipment leased hereunder in good condition and repair reasonable wear and tear excepted."

It is obvious that the provisions of the contract quoted above eliminate any implied warranty of law and the right to recover the particular damages claimed against the owner lessor or the assignee, unless Code Ann. § 109A-2—316 is applicable, which requires that to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability, and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. The lease agreement did not meet this requirement. Both Code Ann. § 109A-2—314 providing for an implied warranty as to merchantability and Code Ann. § 109A-2—315 as to implied warranty for fitness of particular purpose, and Code Ann. § 109A-2—316

expressly refer to sales and buyers and sellers. A sale under Article 2 of the Commercial Code is defined in Section 109A-2—106: "In this Article, unless the context otherwise requires 'contract' and 'agreement' are limited to those relating to the present or future sale of goods. 'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time. *A 'sale' consists in the passing of title from the seller to the buyer for a price (109A-2—401)."* We hold the present lease agreement leasing an automobile for a period of 24 months, even though it places the burden of repairs, taxes, insurance, etc. upon the lessee is not a sale so defined. Whether it would be, or be construed to be a sale, or analogous to a sale, or equivalent to a sale, if there was a provision to purchase at the termination of the lease we do not decide. See in this connection Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House, 59 Misc. 2d 226 (298 NYS2d 392); W. E. Johnson Equipment Co. v. United Airlines, 238 S.2d 98 (Fla.); Sawyer v. Pioneer Leasing Corp., 244 Ark. 943 (428 SW2d 46); Cintrone v. Hertz Truck Leasing &c. Service, 45 N. J. 434 (212 A2d 769); Stang v. Hertz Corp., 83 N. M. 217 (490 P2d 475); Baker v. City of Seattle, 79 Wash. 2d 198 (484 P2d 405); KLPR TV v. Visual Electronics Corp., 327 FSupp. 315. Notwithstanding that some other courts have applied the warranty provisions of Article 2 of the Uniform Commercial Code to leases and other similar contracts, we are of the opinion that the specific language of Article 2 of our Georgia Commercial Code and the warranty provisions expressly referring to sales contracts compel a different conclusion. We cannot ignore this specific language, and to do otherwise "would take us beyond the limits of judicial restraint and into the area of judicial legislation." Bona v. Graefe, 264 Md. 69, 74 (285 A2d 607). In so ruling we do not hold or decide whether a common law implied warranty is applicable to leases of personal property or not. We merely hold that the restrictions of Code Ann. § 109A-2—316 are not applicable to the lease contract in the present case.

We accordingly hold that the counterclaim of the defendant under the record here was not only unsustained but conclusively shown not to exist.

4. Pursuant to the above rulings, the trial judge must be affirmed.

*Judgment affirmed. Quillian and Webb, JJ., concur.*

SUBMITTED APRIL 5, 1974 — DECIDED SEPTEMBER 17, 1974.

*Bobby G. Beazley,* for appellant.
*Fulcher, Hagler, Harper & Reed, John I. Harper,* for appellee.

