## 64333. AMERICAN WAREHOUSE & MOVING SERVICE OF ATLANTA, INC. v. FLOYD'S DIESEL SERVICE, INC.

Carley, Judge.

Appellant-plaintiff is in the moving and transfer business and owns diesel trucks. Appellee-defendant is in the business of repairing and servicing diesel trucks. As a part of its business, appellee both rebuilds diesel engines and also sells rebuilt diesel engines. In other words, appellee repairs and rebuilds diesel engines which its customers already own and appellee also sells newly rebuilt diesel engines to its customers as a total replacement component for their vehicles.

Appellant began to experience mechanical difficulties with the engine in one of its trucks. The truck was brought to appellee who, after investigating, informed appellant that the engine was "really shot." Appellant was advised of the alternatives and selected the least expensive — to have its own engine rebuilt by salvaging what was possible and replacing what was not. Appellee undertook the rebuilding of appellant's diesel engine, charging a total fee of $4,411.11. Of this total amount, some $2,125.16 represented a charge for those parts of appellant's engine which apparently had to be replaced.

Over several weeks and for approximately 8,500 miles, the truck with the rebuilt engine was operated without difficulty. The vehicle then developed mechanical problems and was returned to appellee. Appellee's investigation determined that the diesel engine had again failed. It is undisputed that this second engine failure did not result from a new part which appellee used in rebuilding it, but was caused by a salvaged part from appellant's original engine. Appellee refused to repair the engine at its expense, asserting that under the

circumstances it had no responsibility to do so. The engine was subsequently rebuilt by another at a cost to appellant of approximately $4,200.

Appellant instituted the instant action to recover damages from appellee. The case was submitted to the jury under instructions which would have authorized a recovery by appellant under various contractual and warranty theories. The trial court refused, however, to give several of appellant's requests to charge relating to the implied warranty of merchantability under Code Ann. § 109A-2—314. The jury returned a verdict for appellee. Appellant appeals from the denial of its motion for new trial.

In related enumerations of error, it is urged that the trial court erred in refusing to give appellant's requested charges on the implied warranty of merchantability. The relevant statute provides in part: "Unless excluded or modified . . ., a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Code Ann. § 109A-2—314. It is essentially appellant's position that appellee is a "merchant" with respect to rebuilt engines and that the transaction between itself and appellee was a contract for the sale of such a rebuilt engine.

It is clear that the warranty provisions of Code Ann. § 109A-2—314 are applicable "only to the sale of goods, and not services. [Cits.]" *Pepsico Truck Rental v. Eastern Foods,* 145 Ga. App. 410, 412 (243 SE2d 662) (1978). "Notwithstanding that some other courts have applied the warranty provisions of Article 2 of the Uniform Commercial Code to leases and other similar contracts, we are of the opinion that the specific language of Article 2 of our Georgia Commercial Code and the warranty provisions expressly referring to sales contracts compel a different conclusion. We cannot ignore this specific language, and to do otherwise 'would take us beyond the limits of judicial restraint and into the area of judicial legislation.' [Cit.]" *Mays v. C & S Nat. Bank,* 132 Ga. App. 602, 609 (208 SE2d 614) (1974), overruled on other grounds, *Mock v. Canterbury Realty Co.,* 152 Ga. App. 872 (264 SE2d 489) (1980). Thus, the decisive issue in the instant appeal is whether the transaction between appellee and appellant was a sale of a rebuilt engine or was "analogous" to such a sale. See *Redfern Meats v. Hertz Corp.,* 134 Ga. App. 381, 385 (4) (215 SE2d 10) (1975).

"A 'sale' consists in the passing of title from the seller to the buyer for a price . . ." Code Ann. § 109A-2—106 (1). Tested under this principle, the transaction between appellee and appellant was not a "sale" of a rebuilt engine. The evidence simply does not demonstrate that title to a rebuilt engine passed from appellee to appellant. While

appellant was apparently given the option of purchasing a totally rebuilt engine from appellee, it elected to have its own engine rebuilt at a lower cost. Title to the original engine never left appellant while appellee had it in its possession and, pursuant to the parties' agreement, used the engine, insofar as it was salvageable, as the basis upon which to rebuild. Accordingly, appellant did not receive from appellee title to a rebuilt engine. Appellant merely received back its original engine to which appellee had added such new component parts as was necessary to return it to a functioning condition. Viewed in this light, it would appear that the transaction was not a "sale" of a rebuilt engine or analogous to such a sale. It would appear, instead, that the transaction was a contract for appellee's services to repair appellant's original engine and that the supplying of new component parts was merely an "incidental part" of appellee's overall services in this regard. See generally *Lovett v. Emory University,* 116 Ga. App. 277 (156 SE2d 923) (1967).

In any event, the most that can be said of the transaction is that it was a "sale" of goods only insofar as appellee furnished new components in rebuilding appellant's original engine. The only "goods" sold by appellee to appellant were the new components of the rebuilt engine attached to the salvageable parts of appellant's original engine. Even viewing the transaction in this light, however, it was not error to refuse to charge on the implied warranty of merchantability. The evidence in the instant case demonstrates that the subsequent engine failure was not the result of a defective new component supplied by appellee, but was caused by a part from the original engine reused in the rebuilding. The reuse of this original part would perhaps constitute a breach of appellee's contract to rebuild the engine if its decision to do so was not made in the exercise of "a reasonable degree of care, skill, and ability . . ." *Bodin v. Gill,* 216 Ga. 467, 472 (117 SE2d 325) (1960). However, there being no evidence that the proximate cause of the subsequent damage to the engine was a new component supplied by appellee in its rebuilding, it was not error to refuse to charge that appellant would be authorized to recover on a warranty of merchantability of "goods" sold by appellee. The evidence was not sufficient to show that a breach of such an implied warranty " 'was the cause of the loss sustained. Having [failed to make a] *prima facie* showing appellant was [not] entitled to have the jury pass upon the questions of whether the warranty was breached, and if so, whether the breach caused his injury.' [Cit.]" *Fender v. Colonial Stores,* 138 Ga. App. 31, 35-36 (225 SE2d 691) (1976).

We find no error in the trial court's refusal to give appellant's requested charges on implied warranty of merchantability.

*Judgment affirmed. Quillian, C. J., and Shulman, P. J., concur.*

<span style="text-align:center">DECIDED OCTOBER 25, 1982.</span>

*Rex D. Smith,* for appellant.
*Albert B. Wallace,* for appellee.