41357. FREEMAN v. HUBCO LEASING, INC. et al.
41358. HUB MOTOR COMPANY v. FREEMAN et al.
41359. HUBCO LEASING, INC. v. FREEMAN et al.
(324 SE2d 462)

HILL, Chief Justice.
The questions involved in this case concern the rights and remedies, if any, of a consumer who leases a new car from a leasing com-

pany associated with an automobile dealer when the dealer refuses to repair alleged manufacturer's defects covered by the manufacturer's new car limited warranty because the manufacturer refuses to reimburse the dealer for its expenses in making such repairs.

Dr. Donald Freeman agreed to purchase a 1981 DeLorean sports car from the dealer, Hub Motor Company, in September 1981, and at that time signed a sales contract to buy the car for over $27,000, with $2500 down pending delivery. When it arrived at the dealership, Freeman decided to lease, rather than purchase the car outright, and he was introduced to an agent for Hubco Leasing, Inc., in his office located on the dealer's premises. The lease was executed in November 1981, between Freeman and Hubco Leasing. Under the lease, Freeman is obligated to pay 48 monthly payments of $611, plus $16,000 at the end of the lease term. Freeman accepted the car on November 12, 1981. When it overheated before Freeman arrived at his home less than 5 miles away, a replacement car was substituted.

In February 1982, the second car also overheated, stopped running, and had to be towed in. Some repairs (free) and maintenance (paid for) were performed by Hub Motor on several visits, but all of the "defects" were not remedied. In June, the car again overheated, but this time Hub Motor refused to repair it because by then DeLorean Motor Cars of America had failed to pay for past warranty repairs. At that time, besides the chronic overheating problem, the brakes squealed, a gasket was leaking oil, the odometer did not work, a headlight and interior light were burned out, the roof leaked, the trunk latch was broken, the front door would not close well enough to lock it, and when the car was driven over 50 mph the door-open warning light came on.

At this point, Freeman stopped making the monthly rental payments to Hubco Leasing and, by a letter dated July 7, 1982, sought to revoke acceptance of the car and to rescind the lease. When his demand was refused, Freeman sued Hub Motor and Hubco Leasing to rescind the lease and to recover his payments, damages for loss of use, punitive damages for fraud and litigiousness, and attorney fees and costs of litigation under the provisions of the Magnuson-Moss Warranty — Federal Trade Commission Improvement Act, 15 USCA § 2301 et seq.

Hubco Leasing and Hub Motor denied any liability to Freeman on the ground that any warranties had been made by DeLorean and not by them, and Hubco Leasing counterclaimed seeking to accelerate as a result of Freeman's default in payments under their lease agreement.

On defendants' motion for summary judgment, the trial court found that Hub Motor had breached its agreement to make repairs on behalf of DeLorean, which had been an inducement for Freeman to

purchase the car, and that Hubco Leasing was estopped as a related company from accelerating payments on the lease. The trial court, therefore, ordered Hub Motor to repair the car without charging Freeman and denied Hubco Leasing the right to accelerate, but ordered Freeman to make up the payments past due within 30 days. The court also granted summary judgment in favor of Hub Motor and Hubco Leasing on Freeman's claims for rescission, damages for loss of use, punitive damages, and costs of litigation including attorney fees. Everybody appeals.

This case is not typical of the "lemon car cases" because the manufacturer is not a party, and a lease is involved. Therefore, the agreements of the parties must be examined in greater detail.

The agreement between DeLorean and Hub Motor provides that the dealer agrees to provide without charge to owners of DeLoreans all warranty service to which they may be entitled under the terms of the manufacturer's warranty, and that DeLorean will reimburse the dealer for such parts, materials and labor. DeLorean's warranty covers defects in materials or workmanship caused in the manufacture or assembly of any part of the vehicle for 12 months or 12,000 miles, whichever occurs first. The warranty provides further that DeLorean dealers will correct such defects by repair or adjustment using DeLorean components and that warranty repairs and adjustments will be made without charge. The warranty goes on to provide that it is DeLorean's and its dealers' intention to provide owners with the full benefits of these warranties.[1]

Hub Motor sold the DeLorean in issue to Hubco Leasing by contract which provides that any warranties are those of the manufacturer and that Hub Motor disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose.

Hubco Leasing leased the DeLorean to Freeman by contract

---

[1] The pertinent provisions of the manufacturer's warranty are as follows: "THIS WARRANTY COVERS: DELOREAN MOTOR COMPANY provides this warranty for new 1981 model DMC vehicles. . . . THE WARRANTY IS FOR A PERIOD of 12 months or 12000 miles whichever occurs first. THIS WARRANTY COVERS defects in materials or workmanship caused in the manufacture or assembly of any part of the vehicle. DMC DEALERS will correct such defects by repair or adjustment using new or remanufactured genuine DMC components. WARRANTY REPAIRS AND ADJUSTMENTS will be made without charge (including fluids and lubricants if needed for the warranty repairs). THIS WARRANTY PROVIDES that such repairs or adjustments will be made by DMC dealers within a reasonable time. . . . ***

"THIS WARRANTY DOES NOT COVER: EXTRA EXPENSES including expenses for loss of use of the vehicle during warranty repairs, lodging, car rental, travel cost, loss of pay or towing.

"WHAT TO DO IF WARRANTY REPAIRS ARE NEEDED: . . .

"OWNER ASSISTANCE. It is DMC's and its DMC dealers' sincere intention to provide owners with the full benefits of these warranties."

which provides that the customer at his sole cost and expense shall maintain the vehicle in its original condition as to mechanical performance, reasonable wear and tear excepted, shall make all necessary and required repairs, and shall pay all costs and expenses of use and operation.[2] The lease provides that lessor makes no warranty, either express or implied, as to the condition of the vehicle or its parts or accessories, its merchantability or fitness for any particular purpose, or as to any patent or latent defect in materials, workmanship or otherwise, and no such defect or unfitness shall affect the customer's obligations to comply with the lease. It provides further that the only warranties applicable are warranties made by the manufacturer or its dealers and representatives, and that the customer's rights under the manufacturer's new vehicle warranty shall not be impaired by the lease.

A copy of the manufacturer's warranty was issued to Freeman. We therefore find that Freeman is the holder of, or entitled to the rights under, the manufacturer's warranty, whatever they may be and be worth. The defendants acknowledge this to be so.

1. The trial court held that Freeman is the third party beneficiary of the agreement between DeLorean and Hub Motor that Hub Motor would provide without charge all warranty service called for by the manufacturer's warranty. The trial court also found as a fact that Hub Motor made purchasers aware of the DeLorean warranty and of Hub Motor's agreement to perform such work. The manufacturer's warranty itself supports this finding. The trial court concluded that this constituted an agreement by Hub Motor with Freeman that it would perform manufacturer's warranty service and that DeLorean's default (failure to pay for past warranty work) did not relieve Hub Motor of this obligation. We agree.

The manufacturer's warranty transmitted by Hub Motor to Freeman imposes duties directly upon Hub Motor independent of any warranty disclaimed by Hub Motor. It provides that DeLorean dealers will correct without charge, by repair or adjustment using DeLorean components, defects in materials or workmanship caused in the manufacture or assembly of the vehicle. It states further that it is the intention of DeLorean dealers to provide owners with the full benefit of the manufacturer's warranty.

Hub Motor argues that the manufacturer's default relieved it of responsibility to perform manufacturer's warranty service. In typical third party beneficiary situations, this would be so. "[A] failure of the promisee to perform a return promise ordinarily discharges the

---

[2] Hub Motor signed the lease as guarantor, unconditionally guaranteeing to Hubco Leasing full performance by Freeman of all his obligations.

promissor's duty to a beneficiary to the same extent that it discharges his duty to the promisee." Restatement of the Law, Second, Contracts 2d, § 309, comment at p. 459. However, Freeman is not the typical third party beneficiary; i.e., Freeman is not a stranger to the transaction at hand. Freeman is a lessee-purchaser of a DeLorean under a manufacturer's warranty transmitted by Hub Motor, a DeLorean dealer, which provides that DeLorean dealers will repair manufacturer's defects without charge. Freeman paid a consideration for this warranty and hence, as the trial court found, he is more than merely a third party beneficiary of the DeLorean-Hub Motor dealership contract. We find the dealer's liability to be based not upon any warranty by the manufacturer or dealer but upon the dealer's obligation to repair manufacturer's defects under the manufacturer's warranty adopted and transmitted by the dealer.[3] See Ventura v. Ford Motor Corp. 433 A2d 801, 807 (N.J. 1981), where the selling dealer agreed "to promptly perform and fulfill all terms and conditions of the owner service policy."

The defendants' reliance upon their disclaimers of warranty is misplaced. The dealer never disclaimed responsibility for making repairs covered by the manufacturer's warranty, which responsibility is the basis of our holding above. Kure v. Chevrolet Motor Div., 581 P2d 603 (Wyo. 1978), relied upon by the defendants, is inapplicable here because in that case, on appeal, the purchaser did not contend that the selling dealer was liable to the purchaser.

The trial court did not err in denying summary judgment to Hub Motor because it is liable to Freeman for breach of its duty to repair manufacturer's defects covered by the manufacturer's warranty.

2. We turn now to the Magnuson-Moss Warranty — Federal Trade Commission Improvement Act, supra. An automobile is a "consumer product" as defined in the act. 15 USCA § 2301 (1). Freeman is a "consumer," 15 USCA 2301 (3), and both Hub Motor and Hubco Leasing are "suppliers." 15 USCA § 2301 (4).

The act utilizes a broad definition of "written warranty" which would include not only the manufacturer's warranty given here, 15 USCA § 2301 (6) (A), but also "any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, *repair*, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15

---

[3] This liability is limited to customers of the dealer and does not extend to purchasers of DeLoreans from other dealers.

USCA § 2301 (6) (B). (Emphasis supplied.) By agreeing to repair manufacturer's defects, Hub Motor has made a "written warranty" within the meaning of the act. Ventura v. Ford Motor Corp., supra, 433 A2d at 810.[4] Hubco Leasing has not.

15 USCA § 2308 (a) provides in pertinent part that "[n]o supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product . . . ." 15 USCA § 2308 (c) provides further that disclaimers and limitations made in violation of that section are ineffective for purposes of the act and state law. Hence, Hub Motor may not disclaim or modify any implied warranty.[5]

The act defines "implied warranty" to mean an implied warranty arising under state law. 15 USCA § 2301 (7).[6] The implied warranties arising under state law are the warranties of merchantability and fitness under the Uniform Commercial Code. Merchantability means that the goods are, among other things, fit for the ordinary purposes for which such goods are used. OCGA § 11-2-314 (2) (c). Fitness means that the goods are fit for any particular purpose known to the seller for which the goods are required. OCGA § 11-2-315. Under the facts of this case the two may be treated the same; i.e., the vehicle was warranted as being fit for the ordinary purposes for which such vehicles are used. The exclusion or modification of warranties provision of the UCC, OCGA § 11-2-316, is inapplicable because of 15 USCA § 2308, supra. Hence, we find that Hub Motor is liable to Freeman under Magnuson-Moss for any breach of the implied warranty of merchantability. Ventura v. Ford Motor Corp., supra, 433 A2d at 810.[7]

3. We have now determined that Hub Motor is liable to Freeman for breach of its agreement to repair manufacturer's defects and for

---

[4] *Preiser v. Jim Letts Oldsmobile*, 160 Ga. App. 658 (4) (288 SE2d 219) (1981), is therefore inapplicable here.

[5] On the other hand, the Magnuson-Moss Act does not prohibit a supplier who does not make a written warranty or enter into a service contract from disclaiming implied warranties. Hence, Hubco Leasing is not liable to Freeman under this act. See 15 USCA § 2310 (f).

[6] Under Georgia law, a simple lease is not a sale subject to the Uniform Commercial Code. *Mays v. C&S Nat. Bank*, 132 Ga. App. 602, 609 (208 SE2d 614) (1974). However, a lease which provides that at its termination the lessee shall purchase the leased goods is a "contract to sell goods at a future time" and is a "contract for sale." OCGA § 11-2-106 (1); *Redfern Meats v. Hertz Corp.*, 134 Ga. App. 381, 393 (215 SE2d 10) (1975); *Pierce v. Leasing Intl.* 142 Ga. App. 371 (1) (235 SE2d 752) (1977). Hence, both the sale to Hubco Leasing and its lease to Freeman are subject to the UCC.

[7] The lease provides that the only warranties applicable are warranties made by the manufacturer *or its dealers* and representatives, and that the customer's rights under the manufacturer's new vehicle warranty shall not be impaired by the lease. This provision creates no rights against the lessor; it does preclude restriction of any rights the lessee may have against the dealer.

any breach of the implied warranty of merchantability. Freeman has the duty of repair under the lease and Hub Motor owes to Freeman the duty to repair manufacturer's defects. Moreover, Hub Motor guaranteed to Hub Leasing full performance of all of the customer's obligations under the lease. Hub Motor's breach of its duty to repair manufacturer's defects caused Freeman to cease payments on the lease.

The trial court found that Hub Motor and Hubco Leasing are owned by the same stockholders, have the same officers and directors, and operate from the same offices. The record also shows that the two companies have only two stockholders and that Hubco Leasing pays no rent to Hub Motor. The trial court denied Hubco Leasing's motion for summary judgment, finding that it is estopped from accelerating its lease until the vehicle is repaired because acceleration would frustrate and deprive Freeman of his rights and would be collusive conduct between "brother-sister corporations" to avoid the obligations of Hub Motor.

Where two corporations are owned by the same stockholders and have the same directors and officers, and where one of those corporations breaches in a material way its agreement with a consumer, causing the consumer to breach an agreement with the other corporation, the latter is estopped from insisting upon timely performance of its agreement with the consumer while its related corporation remains in default on its obligations to the consumer. Estoppel prevents two corporations having the same stockholders, directors and officers from squeezing a consumer like a pair of pliers held by a common hand, while one of those corporations continues to breach its contract with the consumer. It prevents one such corporation from collecting sums due from the middleman, until the other pays such damages as are due to the middleman. We therefore affirm the denial of summary judgment to Hubco Leasing. For the same reason we reverse the trial court's order requiring Freeman to pay accumulated arrearages on the lease prior to Hub Motor's payment of such sums as may be due to Freeman. See *Mock v. Canterbury Realty Co.*, 152 Ga. App. 872, 879 (264 SE2d 489) (1980).

4. We turn now to remedies. The plaintiff is entitled to such damages as may be awarded against Hub Motor for breach of its duty to repair manufacturer's defects and any breach of the implied warranty of merchantability, including such damages as may be due from plaintiff to Hubco Leasing for breach of the lease caused by Hub Motor. Although the manufacturer's warranty does not cover expenses for loss of use of the vehicle during warranty repairs, it does not exclude damages for loss of use of the vehicle during the dealer's wrongful refusal to make warranty repairs or as a result of a breach of the warranty of merchantability. See *Jacobs v. Metro Chrysler-Plymouth*,

125 Ga. App. 462, 467 (188 SE2d 250) (1972). The trial court therefore erred in granting summary judgment to the dealer as to damages for loss of use of the motor vehicle during the period the dealer refused to make warranty repairs.

The Magnuson-Moss Warranty Act authorizes recovery by a consumer (who prevails in an action for damages for failure of a supplier, warrantor or service contractor to comply with any obligation under a written or implied warranty or service contract) of actual costs and expenses, including attorney fees. 15 USCA § 2310 (d) (2). The trial court therefore erred in granting summary judgment to Hub Motor as to costs of litigation and attorney fees.

Plaintiff sought to revoke acceptance of the car, one of the remedies authorized by the UCC. OCGA § 11-2-608. The parties to a contract subject to the UCC may provide for remedies in substitution of those provided by the UCC, and may limit the measure of damages (e.g., by limiting the buyer's remedies to return and refund, or repair and replacement). OCGA § 11-2-719 (1) (a). However, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." OCGA § 11-2-719 (2).

The Official Comment to this section states: "[I]t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article *they must accept the legal consequence that there be at least a fair quantum of remedy for breach* of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed. Similarly, under subsection (2), *where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions* of this Article." (Emphasis supplied.) 1A ULA, p. 494 (1976).

Considering the lease in question, in addition to the lessee's duty to repair and the complete disclaimer of warranties referred to above, it contains the following provisions: a conclusive presumption that the leased vehicle is in good order and repair; an indemnity and hold harmless provision in favor of the lessor against any claim by the lessee including claims arising out of or resulting from the manufacture, delivery, performance, use, operation, or leasing of the vehicle, including claims based on negligence, breach of contract or breach of warranty; and a provision entitled "Limitations of Lessor's Liability" but stating that the lessor shall not be liable for any failure of the leased vehicle or for loss of time or other consequential damages re-

sulting from any defect or failure of the leased vehicle.

Thus, the lessor takes no responsibility for the performance of the leased vehicle despite the lessee's obligation to pay over $47,000, including financing charges. In short, the lease excludes all remedies of the lessee except such remedies as the lessee may have against the manufacturer and dealer (and up to now the dealer has denied responsibility for repairing manufacturer's defects).

OCGA § 11-2-719 (1) (a), supra, allows the parties to provide substitute remedies and limit damages, not bar all remedies and avoid all damages. Under the circumstances of this case we find the lease to be unconscionable. *Jacobs v. Metro Chrysler-Plymouth*, supra, 125 Ga. App. at 466-467. Regarding revocation of acceptance, OCGA § 11-2-608, we decide only with respect to leases that where, as here, the lessor makes no warranty and has no obligation to make necessary repairs to the leased vehicle, the lessee is obligated to make all necessary repairs to the leased vehicle, the selling dealer is obligated to the lessee to repair manufacturer's defects, and the dealer defaults on that obligation, the lessee may revoke acceptance as against the lessor where the dealer and lessor have the same stockholders, directors and officers. Compare *Crume v. Ford Motor Co.*, 60 Or. App. 224 (653 P2d 564) (1982). The trial court therefore erred in granting defendants' motion for summary judgment denying plaintiff's right to revoke acceptance as against Hubco Leasing.[8]

*Judgments affirmed in Case Nos. 41358 and 41359. Judgment affirmed in part and reversed in part in Case No. 41357. All the Justices concur.*

DECIDED JANUARY 9, 1985.

*Bedford, Kirschner & Venker, T. Jackson Bedford, Jr., Andrew R. Kirschner,* for appellant (case no. 41357).

*Stephen H. Block,* for appellees.

*Levine, D'Alessio, Mullins & Stone, Stephen H. Block,* for appellant (case nos. 41358, 41359).

*Bedford, Kirschner & Venker, T. Jackson Bedford, Jr., Andrew R. Kirschner,* for appellees.

---

[8] If it is determined that revocation of acceptance is appropriate in this case, then plaintiff's recovery of damages, discussed above, must necessarily be curtailed accordingly.