### 70314. BARRY v. STEVENS EQUIPMENT COMPANY.
(335 SE2d 129)

CARLEY, Judge.

The instant case involves appellant's claim for personal injury damages. Appellant's employer, DeKalb Steel, Inc. (DeKalb Steel), purchased a used alligator shear machine from Hall Steel Company (Hall). Mr. Sheppard, the general manager of DeKalb Steel, then contacted appellee Stevens Equipment Company for the purpose of having the machine repaired and refurbished. Mr. Sheppard specifically requested appellee to replace the machine's bearings and to make any repairs necessary to restore the machine to good working order. Appellee subsequently picked up the machine from DeKalb Steel and made the necessary repairs, which included rewinding the engine, replacing the pins, sharpening the blades, and a general cleaning, repainting and re-assembling of the machine. Mr. Sheppard had not instructed appellee to add any safety devices or to make any modifications to the alligator shears, and no such changes were effectuated by appellee. The machine was returned to DeKalb Steel, where it was subsequently operated by appellant during the course of his employment.

On February 21, 1983, appellant completed a work assignment requiring use of the alligator shear machine. He turned off the electrical switch and began to pick up scraps of material from around the machine. Somehow, appellant's hand was crushed by the machine. It is undisputed that, even after the electrical switch is cut off, an alliga-

tor shear machine will continue to operate. As designed, once the levers are engaged, they make a complete revolution, or cutting length, before they will come to a stop.

Appellant initiated the instant suit against both Hall and appellee, alleging in his complaint that each was liable for breach of implied warranties of merchantability and fitness, for strict liability in tort, and for negligence in failing to warn of the machine's alleged defect in design and in failing to attach certain safety equipment. In two separate orders, the trial court granted summary judgment in favor of each defendant. Appellant appeals only the grant of summary judgment in favor of appellee.

1. Asserting that genuine issues of material fact remain concerning whether appellee was strictly liable in tort for the injuries, appellant enumerates as error the grant of summary judgment in favor of appellee.

OCGA § 51-1-11 (b) (1) provides that "[t]he *manufacturer of any personal property sold as new property* directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." (Emphasis supplied.) Appellant asserts that the trial court erroneously found that appellee was not a "manufacturer" within the meaning of OCGA § 51-1-11 (b) (1).

It is clear that "appellant cannot proceed against [appellee] for 'strict liability' [unless appellee] is a manufacturer." *Ellis v. Rich's*, 233 Ga. 573, 577-578 (212 SE2d 373) (1975). It is appellant's contention that one who completely rebuilds machinery is, in effect, an "ostensible manufacturer." The courts of this State have held that an assembler, defined as "an entity which assembles component parts and sells them as a single product under its trade name is a 'manufacturer' within the meaning of OCGA § 51-1-11 (b) (1)." *Pierce v. Liberty Furniture Co.*, 141 Ga. App. 175, 179 (233 SE2d 33) (1977). However, it is undisputed that appellee was not a manufacturer under this definition because, although it may have assembled component parts, it did not do so for the purpose of having the alligator shear sold as new property under its own trade name. Appellant, however, urges this court to expand the definition of "manufacturer" to include any entity that rebuilds or remanufactures a product, or who merely puts a product into the stream of commerce. Even assuming that an expansion of the definition of "manufacturer" is not precluded by the present case law clearly defining that term, in order to impose strict liability under OCGA § 51-1-11, the "manufacturer" must *sell* the

product, a requirement clearly not met in this case. It is undisputed that DeKalb Steel earlier had purchased the alligator shears and retained title to the machine while it was in appellee's possession. Appellee was instructed to restore the machine to running condition, and the receipt indicated that it had been rebuilt. We have held in the context of the warranty provisions of the UCC, that one who performs such work is a "repairer" of an old product, not the "seller" of a new one. See *Gee v. Chattahoochee Tractor Sales*, 172 Ga. App. 351, 353 (2) (323 SE2d 176) (1984). " 'A "sale" consists in the passing of title from the seller to the buyer for a price . . .' [Cit.] Tested under this principle, the transaction between appellee and [appellant's employer] was not a 'sale' of a rebuilt [machine]. The evidence simply does not demonstrate that title to a rebuilt [machine] passed from [DeKalb Steel] to [appellee]. . . . Title to the [alligator shear] never left [DeKalb Steel] while appellee had it in its possession . . . . Viewed in this light, it would appear that the transaction was not a 'sale' of a rebuilt [machine] or analogous to such a sale. It would appear, instead, that the transaction was a contract for appellee's services to repair [DeKalb Steel's machine]. . . ." *American Warehouse & Moving Svc. v. Floyd's Diesel Svc.*, 164 Ga. App. 106, 107-108 (296 SE2d 64) (1982).

Accordingly, the trial court did not err in granting summary judgment in favor of appellee on appellant's strict liability claim.

2. Appellant also asserts that a genuine issue of material fact remained concerning his count alleging negligence. In that count, appellant averred that appellee negligently failed to warn DeKalb Steel of the machine's defective design, and negligently failed to attach certain safety equipment.

In certain circumstances, an independent contractor may be liable for damages resulting from the work he has *performed or failed to perform in connection with which he has been employed*. See *PPG Indus. v. Genson*, 135 Ga. App. 248, 250 (2) (217 SE2d 479) (1975); *Moody v. Martin Motor Co.*, 76 Ga. App. 456 (46 SE2d 197) (1948); *Shetter v. Davis Bros.*, 163 Ga. App. 230 (293 SE2d 397) (1982). In the instant case, however, appellant does not assert, nor is there any evidence, that his injuries were sustained as a result of any work that was actually undertaken by appellee. Nor does he contend that his injuries were sustained as a result of any failure by appellee to perform work which it was specifically requested to perform. Instead, appellant's allegations of negligence are that, merely because appellee had knowledge of the alleged defect, it had a duty to take measures to correct the defect or warn of its danger. We know of no case law in this State which places such a duty on an independent contractor. *Shetter v. Davis Bros.*, supra, which is relied upon by appellant, is clearly distinguishable from the case at bar. In *Shetter*, supra at 231,

this court held that a contractor cannot escape liability by "ignor[ing] serious and dangerous defects in a design *given to the contractor to execute.*" Appellee herein simply was not given a design to execute, nor was it requested to repair, nor did it attempt to undertake any repairs of that part of the machine which later caused appellant's injuries. Accordingly, the trial court correctly granted summary judgment in favor of appellee as to appellant's claim of negligence.

*Judgment affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 3, 1985 —
REHEARING DENIED SEPTEMBER 13, 1985 — CERT. APPLIED FOR.

*William L. Skinner, John H. Longabaugh,* for appellant.
*John L. Schaub, R. Chris Irwin,* for appellee.