### 72337. THORPE v. ROBERT F. BULLOCK, INC.
(348 SE2d 55)

DEEN, Presiding Judge.

Appellant Thorpe was badly burned when boiling oil spilled on him from the automatic deep fryer he was operating at his place of employment, Bennigan's Restaurant on Interstate North Parkway in Atlanta. The fryer had been manufactured by appellee Robert F. Bullock, Inc. (Bullock), and had been placed by appellee in the restaurant's kitchen on a trial basis, as an inducement to purchase. Appellant filed a complaint against appellee in January 1983, alleging negligence and strict liability in tort, pursuant to OCGA § 51-1-11. He further alleged that the appliance was inherently and unnecessarily dangerous, that it was not merchantable or reasonably suited to its intended use, and that its defects were the proximate cause of his injuries. Appellee moved for summary judgment on the strict liability and negligence *per se* claims, asserting that it had "neither sold, rented, nor received any consideration whatsoever from Bennigan's Tavern in exchange for the use of" the appliance, and, moreover, that a violation of OCGA § 51-1-11 by a manufacturer does not, under

Georgia law, constitute negligence *per se*. Appellee contended in support of its motion that in order for an action to lie under OCGA § 51-1-11, it is necessary that an actual sale be consummated; that no sale or transaction analogous to a sale had occurred; that defendant appellee had committed no act or omission violative of a duly enacted statute or ordinance; and that even if appellee had violated OCGA § 51-1-11, a violation of this statute does not constitute negligence as a matter of law (i.e., negligence *per se*) or as a matter of fact.

While this motion was pending, appellant amended his complaint to allege that merely placing a newly manufactured article in the stream of commerce was sufficient to bring the transaction within the ambit of OCGA § 51-1-11. Appellee then filed a third-party complaint against the manufacturer of the pump and filter which allegedly had caused the oil to spurt out upon appellant. The third-party defendant is not involved in the instant appeal.

The trial court, apparently accepting defendant/appellee's contention that there remained in the case no genuine issue of material fact relative to plaintiff/appellee's contentions, granted partial summary judgment on the issues of strict liability and negligence *per se*. Thorpe applied for and received a certificate of immediate review and applied to this court for an interlocutory appeal, enumerating as error the award of summary judgment to appellant on the sole issue of strict liability in tort under OCGA § 51-1-11. We granted this interlocutory appeal because the question presented here is apparently one of first impression in the Georgia courts, as the Georgia cases cited by the parties involve an actual sale or are otherwise factually distinguishable from the case at bar. *Held*:

OCGA § 51-1-11 reads in pertinent part as follows: "(b) (1) The manufacturer of any personal property *sold* as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property *when sold* by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition *when sold* is the proximate cause of the injury sustained." (Emphasis supplied.) It is undisputed that appellant sustained injuries proximately caused by the boiling oil ejected from the deep fryer. It is also undisputed that appellee Bullock is the manufacturer and seller of the allegedly defective appliance, and that under Georgia law the manufacturer, irrespective of privity, is the appropriate party to be sued in an action of this sort. OCGA § 51-1-11, supra; *Ellis v. Rich's, Inc.*, 233 Ga. 573 (212 SE2d 373) (1975). It is further undisputed that Bennigan's had not purchased or leased the deep fryer. Because, unlike in *Ellis*, supra, and other cases cited by appellee in support of his position, no sale or lease had been consum-

mated, appellee contends that the cited statute does not apply. Appellant, on the other hand, argues that the real test is not whether a sale has actually taken place, but whether the allegedly offending article has been placed in the stream of commerce — that is, *offered for sale*.

Georgia cases cited by the parties are so different on their facts from the case at bar as to provide no clear guidance on this issue. In *Barry v. Stevens Equip. Co.*, 176 Ga. App. 27 (335 SE2d 129) (1985), and *American Warehouse &c. v. Floyd's Diesel Svc.*, 164 Ga. App. 106 (296 SE2d 64) (1982), the issue was whether a repairer as well as a seller is covered by OCGA § 51-1-11. In *Mays v. C & S Nat. Bank*, 132 Ga. App. 602 (208 SE2d 614) (1974), the issue was whether a sale or a lease was involved. Because of the dearth of Georgia cases on point, we look to other jurisdictions which have addressed this issue. In *Price v. Shell Oil Co.*, 79 Cal. Rptr. 342 (1969), the court held, at 348: "In the light of the rationale in [the leading case], we perceive that the doctrine of strict liability in tort enunciated is equally applicable to non-sellers, and . . . to lessors and bailors." In another jurisdiction, in the case of *Delaney v. Towmotor Corp.*, 339 F2d 4 (2d Cir. 1964), the manufacturer of fork-lift trucks had developed a new model and had ordered one placed with a stevedoring firm as a demonstrator. No sale had taken place. The plaintiff was injured when an overhead guard on the apparatus collapsed. Towmotor defended on the ground that it was a gratuitous bailor, whose duty was only to warn of known defects. In assessing liability against the manufacturer, the court observed, at 6, that "New York regards the liability of the manufacturer . . . as arising from '[h]aving invited the use.' " The court acknowledged that the terminology of the Restatement (Second) of Torts, § 402A (1), is expressly "One who *sells* any product in a defective condition" (emphasis supplied) but went on to observe: "But we . . . regard this . . . as a description of the situation that has most commonly arisen rather than as a deliberate limitation of the principle to cases where the product has been sold. . . . We can see no sensible reason why Delaney's rights against Towmotor should be less extensive on the facts here than if Towmotor had first sold the [item] to . . . [plaintiff's employer] for a nominal payment, subject to return if the employer was not satisfied after a trial period." *Towmotor* appears to be on all fours with the case *sub judice*.

The Restatement (Second) of Torts (1965), Section 402A, cited supra, reads in pertinent part as follows: "Special Liability of Seller of Product for Physical Harm to User or Consumer.

"(1) One who sells any product in a . . . condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

Comment (c) to this section of the Restatement states that the premise underlying the rule of strict liability is "that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect . . . that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products."

Comment (f) to this same section, without defining "sale" or expressly limiting strict liability to sale transactions only, states: "f. Business of Selling. The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product." It is apparent from these comments that the Restatement places its emphasis not on whether a specific sale has technically been consummated, but, as the *Price* court, supra, noted, upon whether the manufactured item has been placed on the market. *Price* goes on to cite the definition of "market" as given in Webster's New Intl. Dictionary (3d ed., 1961): "the course of commercial action by which the exchange of commodities is effected." The exchange of commodities is the end result; the entire process, from offer or inducement to delivery and transfer of title, constitutes the "commercial action" designated a "sale."

At least two cases decided in the Indiana courts have relied on the cited provisions of the Restatement (Second), supra, to arrive at a result consistent with that of *Price* and *Towmotor*. In *Perfection Paint v. Konduris*, 147 Ind. App. 106 (258 NE2d 681) (1970), the defendant supplied *gratis* to the employer of plaintiff's decedent a lacquer-reducer to use for removing old paint from a floor which was to be repainted with products to be purchased from defendant. During a demonstration of its use on the premises, the lacquer-reducer was ignited by the flame from a gas-fired water heater, and decedent was killed in the ensuing fire. The manufacturer defended against a count of strict liability on the ground that it had not sold the lacquer-reducer to decedent's employer. The court held, at 686 et seq.: "[T]he tenor of the Restatement is one of strict liability of a seller because of

a special duty and responsibility placed upon a seller who has injected goods into the stream of commerce. . . . . A technical and complete sales transaction, while being a common and easily recognizable commercial transaction, is not the only commercial transaction which comes within the purview of the rule of 'strict liability.' To limit the rule to only those situations in which there has been an actual sale would be to circumscribe the rule to such an extent that its purpose might be defeated. . . . [T]he nature of the transaction serves as the basis of strict liability in tort and not the name by which it is called. In protecting the consumer, the rule of strict liability in tort attaches to products which are placed in the stream of commerce. Here a product . . . was not sold but was surely placed in the hands of a consumer. The requirement has been satisfied. . . ." In *Link v. Sun Oil Co.*, 312 NE2d 126 (1974), Indiana's Court of Appeals again considered the same factors as in *Konduris*, and reached the same conclusion, at 130: "[A] sale is not necessarily an element required to establish liability under section 402A. The word 'sells' as contained in the text of § 402A is merely descriptive, and the product need not be actually sold if it has been injected into the stream of commerce by other means. The test is not the sale, but rather the placing in commerce."

The reasoning of the cited cases is clear and unassailable and mandates a construction of the statute to cover not only the narrow group, or species, of articles that have actually been sold (in the past tense), but also the more comprehensive group, or genus, of articles that have been designed to be sold, have been produced to be sold, and are offered to be sold; that is, injected into the stream of commerce, or marketed.

Moreover, if the Restatement and the statute require that the article not be defective at the moment the sale is consummated (whether by passing of title, or by shipment or delivery of the goods; see UCC §§ 2-106; 2-401), then *a fortiori* it must not be defective at any stage in the negotiation of the sale. The rule requiring strict construction of statutes which like § 51-1-11 are in derogation of the common law (see, e.g., *Colt Indus. &c. v. Coleman*, 246 Ga. 559 (272 SE2d 251) (1980)) does not mandate a construction which produces a patently unjust or absurd result, or which thwarts the manifest public policy underlying the statute. If we were to hold otherwise, then a rescission of a contract for sale or a break-down in the technicalities of a sale would remove from the statute's coverage many a transaction which indisputably it was intended to cover. If an article were to malfunction during the delivery process, for example, and if for some reason the manufacturer were unable immediately to supply a duplicate item, the sale would be voided and the statute, under appellee's rationale, would not apply. Likewise, if the purchaser's check were to be

dishonored by his bank for insufficient funds or for some more abstruse technical reason — or if (*mirabile dictu*) his bank should fail at that critical juncture — the sale would become no ,sale at all, and any injury sustained by the purchaser during the period ordinarily required for such technicalities to surface would be excluded from the statute's remedial reach.

We hold, therefore, that when a manufactured item designed to be sold as new merchandise is initially offered for sale or lease, or otherwise marketed or placed in the stream of commerce, the coverage of OCGA § 51-1-11 is invoked. Having so held, we must conclude that the court below erred in granting partial summary judgment to appellee, and that the factual issues of the case should properly have been submitted to a jury. We therefore remand this case for proceedings not inconsistent with the above.

*Judgment reversed; case remanded. Banke, C. J., McMurray, P. J., Birdsong, P. J., and Benham, J., concur. Carley, Sognier, Pope and Beasley, JJ., dissent.*

CARLEY, Judge, dissenting.

Were there no statutory constraints in this case, I would concur in the majority's conclusion that with regard to application of strict liability principles to a manufacturer, the situation sub judice is certainly logically and reasonably equivalent to a "sale." However, this is a court for the correction of errors of law and we are without power or authority to prescribe a remedy for what we perceive to be legislative inadequacies. In this case, the plain wording of the statute makes it clear that "in order to impose strict liability under OCGA § 51-1-11, the 'manufacturer' must *sell* the product, a requirement clearly not met in this case." (Emphasis in original.) *Barry v. Stevens Equip. Co.,* 176 Ga. App. 27, 28-29 (335 SE2d 129) (1985). Thus, as much as I would like to embrace the ruling of the majority, I believe that the statute mandates otherwise and I must join Judge Beasley's dissent.

I am authorized to state that Judge Sognier and Judge Pope join in this dissent.

BEASLEY, Judge, dissenting.

While there is much persuasive authority to justify, on the basis of the purpose of the statute, the conclusion reached by the majority, it reaches over into the legislative sphere. The court construes the word "sold," used three times in the governing statute and used to the exclusion of other words, to mean from the point it is "initially offered for sale or lease, or otherwise marketed or placed in the stream of commerce."

Much reliance is placed on cases from other states and on the comments accompanying the Restatement (Second) of Torts (1965),

Section 402A. We are not, however, construing the meaning of the Restatement's language, and the foreign courts cited do not set forth their statutes, if that is what they are interpreting. If they are construing statutes, we do not know if they are identical to ours; if they are instead developing judicial policy or expanding common law, they are performing a function different from the one we are called upon to accomplish.

Here we are asked to construe the Georgia statute which imposes strict liability on a manufacturer regardless of privity with the person injured. OCGA § 51-1-11 (b). When does the manufacturer's liability commence? "When sold" is the term used repeatedly in the statute. It is the only transactional event mentioned.

The Supreme Court construed the statute strictly, in *Ellis v. Rich's, Inc.*, 233 Ga. 573 (212 SE2d 373) (1975). It gave the word "manufacturer," used expressly by the legislature, its common meaning and declined to rationalize a broader meaning into it. It recognized that the statute, and a related one, were "recent expressions of the legislature establishing but also limiting the public policy of this state in this area. Consequently, these legislative enactments preclude any extension of strict liability by this court." Id. at 577.

Although ten years have passed since *Ellis*, the statute has not been changed and there appears to be no reason for adopting a more aggressive approach to construction of the statute. In fact, the approach of strict construction was given recently in *Daniel v. American Optical Corp.*, 251 Ga. 166, 167 (1) (304 SE2d 383) (1983): "OCGA § 51-1-11 (b) (Code Ann. § 105-106) is our statute governing strict liability in tort which is in derogation of common law and 'must be strictly construed or limited strictly to the meaning of the language employed and not extended beyond plain and explicit terms.' [Cits.]"

We must assume that the legislature deliberately chose the word "sold." Where the language of an act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden. *Gazan v. Heery*, 183 Ga. 30, 39 (187 SE 371) (1936); see OCGA § 1-3-1 (b). We must also apply the rule of construction that the absence of other transactional events, which would have been easy to list, such as "leased, rented, or delivered for use" meant that they were not to be embraced in Georgia's initial foray into strict products liability. *Jenkins v. Jones*, 209 Ga. 758, 761 (75 SE2d 815) (1953). Compare *Sovereign Camp v. Heflin*, 188 Ga. 234, 235 (3 SE2d 559) (1939). The court leaned on the side of four-square interpretation when considering the legislature's use of "sale" in another statute. *Mays v. C & S Nat. Bank*, 132 Ga. App. 602, 609 (208 SE2d 614) (1974), overruled on other grounds, *Mock v. Canterbury Realty Co.*, 152 Ga. App. 872, 879

(264 SE2d 489) (1980).[1]

There are sound policy considerations for imposing strict liability in tort with respect to products placed in the stream of commerce. See, e.g., Prosser & Keeton on Torts (5th ed.), 690-692. As those authors point out, "As to defendants other than sellers, who supply chattels under contract, there has been much the same development in the law of negligence as in the case of sellers." Id. at 715. Lessees, lenders, and other bailors are discussed. Id. at 715-719. See also Eldridge, Products Liability in Ga., § 5-11. But the development of that law in Georgia should await action by the legislature which set the public policy by adopting the statute which governs here. It can then take into account the factors such as accident prevention, enterprise risk-shifting capacity, and difficulties of proving negligence, which counsel the expansion to circumstances other than sales. See Prosser & Keeton, supra at 718, for this list of factors. These and other arguments, including those addressed to the court, should be directed to the legislature. Otherwise we are intruding on legislative terrain in an area it has carved out as best governed by a statute derived from the legislative process rather than by a decree developed by judicial consideration focused on the context of a single case.

I am authorized to state that Judge Sognier and Judge Pope join in this dissent.

DECIDED JUNE 19, 1986 —
REHEARING DENIED JULY 24, 1986 —

*Theron D. Warren III*, for appellant.
*Alfred B. Adams, Cathleen M. Devlin, John F. Davis, Jr.*, for appellee.

---

[1] Under that law, a simple lease is not a sale, and we do not even have a simple lease in this case. See *Freeman v. Hubco Leasing*, 253 Ga. 698, 703 fn. 6 (324 SE2d 462) (1985).