43339. VILLAGE ENTERPRISES, INC. v.
GEORGIA RAILROAD BANK & TRUST COMPANY.

PANNELL, Judge. Village Enterprises, Inc., brought an action for declaratory judgment against Georgia Railroad Bank & Trust Company, seeking a judicial determination of the mean-

ing of, and the application of, a restrictive covenant in a lease relating to a shopping center. Both parties moved for a summary judgment and after hearing the court granted a summary judgment in favor of the defendant bank. The plaintiff appealed. *Held:*

1. "The construction of a contract is a question of law for the court. Where any matter of fact is involved (as the proper reading of an obscurely written word), the jury should find the fact." *Code* § 20-701. "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." *Code* § 20-702. "A contract may be so clear as not to require interpretation, but a mere lack of clarity on casual reading is not the criterion for determining whether a contract is afflicted with ambiguity within the rule as to the admission of parol evidence to explain its meaning. Nor is a contract ambiguous within that sense merely because it may be even difficult to construe. The construction of a contract, if needed, being a question of law for the court, as well as a duty that rests upon the court, there can be no ambiguity within the rule to which we have referred, unless and until an application of the pertinent rules of interpretation leaves it really uncertain which of two or more possible meanings represents the true intention of the parties." *McCann v. Glynn Lumber Co.,* 199 Ga. 669, 679 (34 SE2d 839); *Dorsey v. Clements,* 202 Ga. 820, 823 (44 SE2d 783, 173 ALR 509).

2. Where the owner of a 17-acre tract of land developed it as a shopping center and leased lots to various tenants, including a banking business, which leases described the tract leased by metes and bounds and further described it as "being delineated on a master plan of Daniel Village Shopping Center prepared by Eve and Stulb, Architects, from engineering survey dated October 24, 1954, as revised in November, 1954, on January 10, 1955, and on February 27, 1955, and being shown as Building A, Units 5 and 5-A [in the case here], on said master plan, the said master plan and any subsequent revisions thereof which shall not substantially vary from that above described to be identified by the initials of the lessor and the lessee, and a copy thereof shall be on file in the offices of Sherman and Hemstreet, Inc., and with the lessee"

and provides that the lessor shall construct a building thereon "in the nature of a building similar . . . to the buildings which will be constructed by the lessor on other portions of its property known as Daniel Village," and that "[t]he lessor will not permit, during the term of the lease or any renewal thereof, the use of any property in Daniel Village by any person, firm, association or corporation who shall conduct thereon any banking business, whether it shall be a savings, loan or general commercial banking business except the lessee," and that lessee will not permit sales practices which "would tend to detract from or impair the reputation or dignity of . . . the shopping center or the general reputation or dignity of the businesses of others conducted in the shopping center," and "the lessee shall not burn or otherwise dispose of any trash, waste, rubbish and garbage in or about the premises of said shopping center" and which permits the lessor to "construct additional buildings and change, alter, remodel or remove any of the improvements of the shopping center other than the leased premises" and "from time to time remake the parking area or increase or enlarge the same, or change the flow of traffic therein by signs or other devices, provided . . . the entire parking area shall be substantially the same size as shown on the plan referred to herein; it being expressly understood that the areas shown as building areas for present and future development shall be expressly excluded from the parking area" and "the lessor shall have the right to shift the location of such building areas reserved as the best interest of the shopping center so dictates" and the lessee "shall not use or permit others on its behalf to use the name of the premises, the building or the shopping center," except for certain purposes and that the lessee shall not acquire any property right in any name or designation which "shall contain as a part thereon the name or any reference to the premises, the building, the shopping center or any part or combination of parts of the same" and that the lessor shall black-top the "area delineated in red . . . and designated on the said plan as the 'area to be black-topped,'" and that the lessee and other tenants shall have the joint use of the same as a customer parking area as well as the joint use of the remaining parking area "delineated in blue on said plan and designated as 'further parking area,' to be developed as shown on the said plan," the terms "Daniel Village Shopping

Center," "Daniel Village," and "shopping center" are not ambiguous terms but refer solely to the original 17-acre tract as shown by the master plan, and the terms are synonymous. The fact that subsequently to the execution of this lease the area surrounding the original 17 acres also developed commercially and the entire area became generally known as Daniel Village does not require a different result in determining the intention of the parties at the time the lease was entered into; nor would the fact that such general appellation for the area was used by the general public at the time the lease might have been subsequently renewed.

3. While "[t]he intention of the parties may differ among themselves" and "[i]n such case, the meaning placed on the contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning." *Code* § 20-703, such provision has no application where the contract and the terms involved are not ambiguous. *Holloway v. Brown*, 171 Ga. 481, 483 (155 SE 917). Accordingly, evidence to such effect is not controlling in the present case.

4. Assuming, without deciding, that the owner who here subsequently acquired adjoining property has so integrated such adjoining properties as to make them a part of the shopping center, and that such action would make such property subject to the restrictive terms of the lease (see Parker v. Louis Grocery Co., 246 Miss. 873 (153 S2d 261); Carter v. Adler, 138 Cal. App. 2d 63 (291 P2d 111); Cragmere Holding Corp. v. Socony-Mobil Oil Co., 65 N. J. Super. 322 (167 A2d 825); *Rosen v. Wolff*, 152 Ga. 578 (1) (110 SE 877)), there is no evidence that the property in controversy has been so integrated; on the contrary, the owner has entered into a contract to sell said property (acquired 12 years after the execution of the original lease) to another banking business contingent on the property being re-zoned from residential to commercial and contingent upon a decision by the courts in this declaratory judgment action construing the lease as not restricting the use of the property in controversy, this later contingency having been agreed upon after the controversy as to the construction of the lease arose between the parties.

5. Accordingly, we must hold that the trial judge erred in holding that under the terms of the lease, the property, on option to another bank, was subject to the restrictions contained in Paragraph 6 of the lease and in holding that such action

would be a breach of the covenant of quiet enjoyment of the premises leased to the defendant bank and in entering a summary judgment for the defendant bank. The trial court also erred in not entering the summary judgment in favor of the plaintiff upon its motion therefor.

*Judgment reversed. Jordan, P. J., and Deen, J., concur.*

ARGUED JANUARY 9, 1968—DECIDED APRIL 29, 1968— REHEARING DENIED MAY 15, 1968—CERT. 

*Hull, Towill & Norman, W. Hale Barrett,* for appellant.

*Cumming, Nixon, Eve, Waller & Capers, Gwinn H. Nixon, Wm. Byrd Warlick,* for appellee.