## 58414. MOCK et al. v. CANTERBURY REALTY COMPANY.

BIRDSONG, Judge.

Summary judgment. The appellants, Mock and Tam-O-Shanter Properties, Inc. (TOS), undertook to purchase several hundred acres of land divided into separate parcels, most parcels being individually held by separate banks. The banks held title to the land due to deeds in lieu of foreclosure executed by an earlier developer. Each bank held title to a portion of the entire tract equivalent in ratio to that bank's portion of the entire loan to the original developer. TOS, together with Mock as its principle owner, executed security deeds to the several banks in addition to a minimal cash down payment. Each bank established a schedule of installment payments on the security deeds to be made by TOS based upon the projected sale of lots and houses thereon. TOS and Mock (and Mock's real estate firm) entered into an agreement with the appellee, Canterbury Realty Co., whereby Canterbury agreed to aggressively promote lots and homes for sale by TOS. Among other financial arrangements, TOS executed four notes to Canterbury. In substance each note reflected TOS' payment of deferred real estate commissions due Canterbury arising from TOS' purchase from a bank of that bank's undivided interest in the whole parcel of real property. Minimum payment on any annual installment due on a Canterbury note was 5% of the cash amounts paid in partial liquidation of the purchase price to the particular bank

from whom the land was purchased. In effect the face amount of each promissory note for commissions from TOS to Canterbury was based upon the total purchase price paid by TOS to the selling bank. However, to limit the financial impact upon TOS which was in the process of purchasing a several million dollar development, to be paid to the selling banks over a period of several years from funds generated by the development of the lots and sale of homes thereon, TOS was not obligated to pay Canterbury the entire real estate commission at the outset. Nevertheless, each note called for a sum certain to be paid, this amount being equal to the real estate commission payable for a sale of a particular tract at the full price as if paid in one payment. The installment payments called for in each note were based upon the projection of minimum sales generated by Canterbury during each year of the existence of the note. There was a provision also that TOS could pay partial prepayments on the note, with such partial prepayments credited to the next annual principal payment due. Apparently this provision contemplated that Canterbury might generate more than the minimum sales during any given year. If Canterbury failed to generate the promised sales, TOS also had the right to terminate the exclusive agency granted to Canterbury. Each note however also provided that Canterbury had the right to declare the total amount due and forthwith payable in advance of the maturity date upon the failure of TOS to pay when due any one of the installments. It is uncontested that each of the notes was executed by TOS, remain unpaid, and that demand for payment has been made by Canterbury.

In addition to the four notes executed by TOS, Mock in his individual capacity executed a $5,000 note to Canterbury. This note was prepared on a standard business form entitled "Real Estate Note — Equal Monthly Payments." However, the note as executed was an unequivocal promise by Mock to pay to Canterbury the sum of $5,000. The face of the form note provided blanks for stating a rate of interest and a number of monthly installments, in amounts and frequency to be inserted. These spaces were not filled in on the face of the note. The form note also provided a blank to insert the place at

which principal and interest might be paid as well as provisions for a security deed. Neither were these blanks filled. In substance then the note provided only that Mock would pay Canterbury the sum of $5,000.

Canterbury filed suit against several defendants, including Mock as an individual and TOS as a corporate defendant. In its complaint Canterbury sought to recover the $5,000 from Mock on the individual note and a sum of $44,863.12 from TOS based upon the four notes signed by TOS in favor of Canterbury, in addition to certain other claims. Mock and TOS filed an answer denying the indebtedness and filed a counterclaim. The counterclaim asserted that Canterbury had "meddled" in the affairs of TOS to the extent that major lenders had refused to continue to make advances to TOS requiring TOS to execute deeds back to the lenders in lieu of foreclosure. TOS sought in excess of $1,000,000 as punitive damages as a deterrence to Canterbury. The trial court granted summary judgment to Canterbury as to the note executed by Mock and as to the four notes executed by TOS, but did not mention or otherwise dispose of the remaining counts of the complaint or the counterclaim. The court entered final judgment on the notes in the amount claimed. The briefs reflect that Canterbury has sought a fi. fa. on the judgment. Mock and TOS bring this appeal enumerating two alleged errors. *Held:*

1. In their first enumeration of error, appellants Mock and TOS urge that it was error for the trial court to grant summary judgment to Canterbury without also disposing of the counterclaim. This enumeration presents a procedural question that is clouded in confusion. The progenitor of what would appear to be a supportive rule is found in *Rubel Baking Co. v. Levitt,* a 1968 case of this court found at 118 Ga. App. 306 (163 SE2d 437). That case held in substance that where the defendant urges a legally sufficient counterclaim for an amount in excess of the amount demanded in the petition, the *denial* of a motion for summary judgment in toto ordinarily will not be error. From this holding declaring only that ordinarily the denial of summary judgment, where a valid counterclaim is pending, is appropriate, this court has significantly extended the *Rubel* rationale for reasons not apparent. In

*McDonald v. Parker,* 134 Ga. App. 577 (215 SE2d 334), the trial court was faced with a suit involving a note for $3,000. McDonald admitted the note but urged partial satisfaction. McDonald also filed a counterclaim, which if established, would have allowed McDonald to recoup $3,780, an amount in excess of the principal and interest sought on the note by Parker. In those circumstances, this court held that the trial court erred in *granting* summary judgment in any amount to Parker. Though no authority was cited for this statement, it would appear to have its genesis in the *Rubel* holding that ordinarily it is not error to deny summary judgment where the amount of a valid counterclaim exceeds the amount of the original claim. It was a major extension of the beneficent rule that it is not error to *deny* summary judgment where there is a significant chance that the plaintiff's recovery might be substantially reduced or offset, to one that asserts it is error to *grant* summary judgment under such circumstances. Since the *McDonald v. Parker* case, supra, that rule has been expressed repeatedly by this court. One of the latest cases stating the expanded rule is *Match Point v. Adams,* 148 Ga. App. 673, 675 (252 SE2d 90), in which this court held without stating a rationale that where the order granting summary judgment to appellees made no reference to the counterclaim, it was error to grant the summary judgment on the complaint without also ruling on the counterclaim. The citation in sole support for this ruling was *Shaw v. Cousins Mtg. &c. Investments,* 142 Ga. App. 773 (7) (236 SE2d 919), which in turn relied upon *Real Estate World v. Southeastern Land Fund,* 137 Ga. App. 771 (224 SE2d 747). *Real Estate World* held that the trial judge erred in granting summary judgment to the plaintiff on a note while defendant's counterclaim, which alleged a right of recovery, was still pending. The authority cited for that holding was *McDonald v. Parker,* supra. Thus, the evolution of the positive pronouncement found in *Match Point v. Adams,* supra, would appear to have its creative support in the *Rubel* decision, a case that clearly did not hold or establish a rule that it is error to *grant* summary judgment where there is a pending counterclaim.

We further observe that what appeared to be a

permissive exercise of judicial discretion in the *Rubel* case, has moved somewhat toward a more arbitrary rule. Following the *Rubel* decision in 1968, this court followed the rule announced therein in the case of *Tipton v. Harden,* 128 Ga. App. 517, 519 (2) (197 SE2d 746), adhering to the principle that it is not an abuse of discretion to deny a summary judgment in the face of a valid, pending counterclaim. However, in *White v. Watson Enterprises,* a 1973 case appearing at 129 Ga. App. 203, 205 (2) (199 SE2d 357), this court held: "Of course, the filing of a legally sufficient counterclaim in excess of plaintiff's claim ordinarily *requires* the denial of a motion for summary judgment." (Emphasis supplied.) The basis for this pronouncement was the *Rubel* case. It is interesting to note that because as a matter of law the counterclaim did not exceed the plaintiff's claim (and because the *Rubel* case was not controlling), this court affirmed a grant of summary judgment to the plaintiff even though there was a pending counterclaim.

Yet another line of cases has evolved from the supportive case of *Rubel Baking Co. v. Levitt,* supra. In *Mays v. C. & S. Nat. Bank,* 132 Ga. App. 602, 606 (208 SE2d 614), this court held: "Because there was a cross claim pending at the time the motions [for summary judgment] were filed, seeking recovery of sums in excess of the amount sought by plaintiff, and plaintiff in its motion sought no adjudication thereof, it would appear that plaintiff's partial motion for summary judgment sought an interlocutory adjudication." When the trial judge entered a final judgment on the partial grant, this court held: "In doing so he erred, because the recovery of plaintiff could be lessened by a recovery by the defendant on the counterclaim, or if the amount of the counterclaim recovery be sufficient, even secure a recovery against the plaintiff over and above the amount of the plaintiff's claim." *Mays,* supra, p. 606. This error was found to be harmless within the context of that case because the counterclaim was held legally not to exist. Citing the *Mays* case, this court held in *Kinsey v. Fidelity Nat. Bank,* 139 Ga. App. 217, 221 (3) (228 SE2d 161) that "[t]here is no evidence piercing the pleadings, and the trial judge, therefore, erred in sustaining the plaintiff's motion for

summary judgment against the counterclaim and in entering judgment against the defendant on the note prior to the counterclaim being determined." This portion of the ruling in the *Kinsey* case is the same as that announced in the decisions in *Match Point, Shaw,* and *Real Estate World,* supra.

However, a portion of the decision in the *Mays* case spawned another theory. For instance in *Cobb County Syndicate I v. Berens,* 144 Ga. App. 775, 777 (242 SE2d 629), this court found that: "The court did not grant summary judgment as to the counterclaim but merely as to the deficiency, thus being the grant of a partial summary judgment." On the ground that the trial court did not grant or deny summary judgment as to the counterclaim nor enter a money judgment for amount sought in the complaint, the court distinguished *Rubel, Tipton, Mays, Shaw,* and *Real Estate World,* supra. In substance, the decision held that all the trial court sought to do was to eliminate issues by a partial grant of summary judgment and thus in the guise of summary judgment formulate a pretrial order to limit the issue to be tried at the ultimate trial of the counterclaim. This partial summary judgment doctrine was followed in *Fagala v. Morrison,* 146 Ga. App. 377, 378 (2) (246 SE2d 408). *Fagala* had maintained that because his pending cross claim was for an amount greater than that sued for by the appellees, it was error to grant summary judgment to the plaintiffs. However, in that case the trial court did not enter final judgment thus leaving the grants of summary judgment still pending in the lower court, subject to the resolution of the unresolved issues. For that reason, the court distinguished *Rubel* and *Cobb County Syndicate I,* supra.

One of the most recent pronouncements of this court on this issue was found in *Ivey Contracting Co. v. Elliott,* 151 Ga. App. 361 (259 SE2d 658) (1979). In that case, the plaintiff brought suit on a promissory note. The defendant counterclaimed. The trial court granted summary judgment to the plaintiff but left the pending counterclaim for future resolution. On appeal, this court directly faced the issue of the impact of the pending counterclaim on the grant of summary judgment on the main action. The first issue resolved was that the grant of

summary judgment was called for by the evidence. The court then analyzed several of the cases discussed hereinabove (i.e., *Rubel Baking Co. v. Levitt; Kinsey v. Fidelity Nat. Bank; Cobb County Syndicate I v. Berens; Mays v. C. & S. Nat. Bank*) and concluded that once a plaintiff-claimant has demonstrated entitlement to summary judgment as to liability, sound reasoning dictates that the plaintiff should not be required once again to prove that entitlement. In the *Ivey* case, this court concluded that any potential harm to the defendant would be obviated by an affirmance of the final order granting summary judgment to the plaintiff with direction that the amount of the recovery against defendant be reduced by the amount, if any that the defendant might recover on its counterclaim. The opinion also noted that any fi. fa. on the final judgment in favor of the plaintiff would be issued and effective only after the trial on the counterclaim. While we are aware that the trial court issued a final order in the instant case by declaring that no reason existed why final judgment should not be entered and that Canterbury has sought the issuance of a fi. fa. on that judgment, this does not negate the suspension of the vitality of the fi. fa. caused by the prompt and timely filing of the appeal by the appellants. See Code § 39-115.

We are persuaded by the logic advanced in the latest discussion of the issue by this court. There seems to be no sound reason to conclude that where there is a pending valid counterclaim, the trial court *must* deny a persuasive and valid motion for summary judgment, or alternatively, that it is error per se to grant a motion for summary judgment where there is a pending, valid counterclaim. Nevertheless, we recognize the inherent discretion vested in a trial court to weigh the equities of the situation and find no flaw in the reasoning of the *Rubel* and *Tipton* decisions that ordinarily it is not error for the trial court to *deny* what appears to be valid grounds for a summary judgment in the face of a valid, pending counterclaim where there is a reasonable probability that the recovery of the plaintiff will be greatly mitigated or even off-set by the defendant's recovery on the trial of the counterclaim. We believe that in each of these situations, the trial court should examine the question of the viability of the motion

for summary judgment on its own merits, independently of the merits of a pending, valid counterclaim. By the device of summary judgment, the trial court can eliminate extraneous issues from the ultimate trial and yet protect the party against whom the grant of summary judgment is rendered pending the trial of the counterclaim by the expedient of refusing to issue a final judgment until the counterclaim is concluded. Such is the approach followed in the cases of *White v. Watson Enterprises; Cobb County Syndicate I v. Berens; Fagala v. Morrison,* and *Ivey Contracting Co. v. Elliott,* supra. Insofar as the following stated cases support a holding that the trial court *must* deny summary judgment, or errs per se by *granting* summary judgment in cases where there is a valid, pending counterclaim, we conclude those cases are in error and create an improper limitation upon the discretion of the trial court and will no longer be followed in that regard. *Match Point v. Adams; Shaw v. Cousins Mtg. &c. Investments; Real Estate World v. Southeastern Land Fund; McDonald v. Parker; Mays v. C. & S. Nat. Bank; White v. Watson Enterprises; Kinsey v. Fidelity Nat. Bank,* supra, are hereby overruled.

Based upon the foregoing, we conclude that the trial court did not err procedurally in granting summary judgment to Canterbury on the five notes. Though the trial court erred in entering a final judgment, thus authorizing the issuance of a fi. fa. prior to the resolution of appellants' counterclaim, we view that error to be harmless because of the supersedeas automatically invoked by the timely appeal taken by the appellants. We can continue that protection by affirming the final order granting partial summary judgment on the five notes with direction that the amount of Canterbury's recovery against the appellants — for which fi. fa. will issue after trial of the counterclaim — be reduced by the amount, if any, that appellants may recover on their counterclaim. "This would have the beneficial, economical and overall just effect of dispensing with the requirement that [Canterbury] again demonstrate [its] right to summary judgment on the note[s], while protecting [appellants] from enforcement of a money judgment until such time as the merits of its counterclaim may be established." *Ivey*

*Contracting Co. v. Elliott,* 151 Ga. App. 361 (4), 366 supra. The first enumeration is without merit.

2. In their second enumeration of error, appellants complain that the trial court ignored serious questions of fact and thus erred in granting summary judgment to Canterbury on the five notes. As to the four notes executed by TOS, appellants argue that no commissions were due to Canterbury until and unless sales occurred. Appellants contend that this is manifest from the face of each note itself because each note specifies commissions are figured on 5% of the cash amounts paid to the seller bank. Canterbury on the other hand argues that the notes are for a sum certain with an acceleration clause which has been invoked by Canterbury. It is Canterbury's contention that the notes are admitted, the notes show themselves to be due, and that TOS does not deny that demand has been made, or that payment has not been made.

In order to accept the arguments of the appellants, we would have to look beyond the face of the promissory note. However, we do not perceive the ambiguity advanced by appellants. The notes may mention that commissions are to be based on 5% of the amounts paid to the seller bank. However, that 5% has already been computed as a definite amount and constitutes each installment, the sum total of which adds up to the total commission due based upon the total selling price. Added to the fact that the cumulative total of the installment commissions equals the amount shown as due the payee of the note, is the right of the payee to declare the amount due on the note if any installment is not paid when due. Such a right is totally inconsistent with a contention that the commission is inchoate and to be fixed and determined each year in accordance with the amount of sales consummated.

The construction of a plain and definite contract, if needed, is a matter of law for the court; a contract is not ambiguous, even though difficult to construe, unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties. *Village Enterprises v. Georgia R. Bank &c. Co.,* 117 Ga. App. 773 (1) (161 SE2d 901). We find the provisions

of this contract to be plain, unambiguous and susceptible of only one interpretation. We decline to inquire behind the plain meaning of the notes in question so as to vary their meaning as contended by appellants. The parol evidence rule fixes the finality of a written contract which is unmixed with fraud respecting the subject matter. *Dolanson Co. v. C. & S. Nat. Bank,* 242 Ga. 681 (251 SE2d 274); *Ansley v. Forest Services,* 135 Ga. App. 745 (218 SE2d 914). It is moreover a rule of substantive law, and even though parol evidence be erroneously admitted without objection, it is without probative value to vary terms of a written contract. *Lyon v. Patterson,* 138 Ga. App. 816, 820 (227 SE2d 423); *Cooper v. Vaughan,* 81 Ga. App. 330, 337 (58 SE2d 453).

As to the note signed by Mock individually, Mock argues that the note is uncertain and vague and thus is no note at all. We disagree. The absence of a maturity date creates a demand note. *Pugh v. First Nat. Bank,* 130 Ga. App. 627, 628 (2) (204 SE2d 370). The absence of any installment due dates or amounts due on installments simply created the note a demand note for the face amount of the note. We are not concerned by the absence of an interest rate inasmuch as appellant is seeking only the face amount of the note, i.e., $5,000. Thus, there is no ambiguity involved; only a $5,000 demand note for which demand has been made. Once again we will not examine beyond the clear intent of the written document to add to or detract from the stated terms of the note. We reiterate that where the provisions of a contract are unambiguous, its interpretation is a question of law for the trial court. *Henderson Mill Ltd. v. McConnell,* 237 Ga. 807, 809 (229 SE2d 660). Courts, including this one, are not at liberty to revise contracts while professing to construe them. *Smith v. Standard Oil Co.,* 227 Ga. 268 (1) (180 SE2d 691); *Stuckey v. Kahn,* 140 Ga. App. 602, 606 (231 SE2d 565).

The purpose of the Summary Judgment Act is to eliminate the necessity for trial by jury where, giving the opposing party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. *Summer-Minter & Assoc. v. Giordano,* 231 Ga. 601,

603 (203 SE2d 173); *Holland v. Sanfax Corp.*, 106 Ga. App. 1 (126 SE2d 442). Canterbury has met that burden in this case. We find no error in the partial grant of summary judgment as to each of the five notes involved in this appeal. Accordingly, the order granting summary judgment to Canterbury on the five notes is affirmed with direction that the amount of the money judgment be reduced by an amount equal to appellants' recovery, if any, on their counterclaim.

*Judgment affirmed with direction. Deen, C. J., Quillian, P. J., Shulman and Carley, JJ., concur. Smith, J., concurs specially. McMurray, P. J., and Banke, J., concur in judgment only.* \*

ARGUED SEPTEMBER 11, 1979 — DECIDED JANUARY 8, 1980.

*Robert E. Hall*, for appellants.
*William R. King, W. Pitts Carr, David H. Pope, Charles B. Zirkle, Jr.*, for appellee.

SMITH, Judge, concurring specially.

I believe that *Rubel Baking Co. v. Levitt*, 118 Ga. App. 306 (163 SE2d 437) (1968), should be overruled. In my view, where a moving party satisfies the legal requirements for summary judgment, the court must grant the motion. The language of CPA § 56 (c) (Code Ann. § 81A-156 (c)) is mandatory: "The judgment sought *shall be rendered forthwith* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . " (Emphasis supplied.) In view of this statutory command, I believe it would be erroneous for a trial court not to enter summary judgment to a moving party where the legal criteria for summary judgment are satisfied. The amount of an opposing party's claim should have no bearing on the trial court's

---

\* The eight judges constitute the whole court in view of the resignation of Underwood, J., effective December 31, 1979.

determination as to whether a moving party is entitled to summary judgment.

Furthermore, I do not believe the main opinion's reference to the "expedient of refusing to issue a final judgment until the counterclaim is concluded" is necessary. A grant of summary judgment, though appealable, is not a final judgment upon which a fi. fa. can issue where a valid counterclaim is pending against the plaintiff. *Culwell v. Lomas & Nettleton Co.,* 242 Ga. 242 (248 SE2d 641) (1978). See 33 CJS 138-139, Executions, § 6. Moreover, where a valid counterclaim is pending, I do not believe the trial court would generally be authorized to enter a final judgment under CPA § 54 (b) (Code Ann. § 81A-154(b)), by an express determination that "there is no just reason for delay" and an express direction for entry of judgment, unless the court also stays enforcement of the judgment under CPA § 62 (f) (Code Ann. § 81A-162(f)).[1]

Absent unusual circumstances which need not be considered here, there *is* a just reason for delay where a valid counterclaim is pending against the plaintiff. Where such a counterclaim is pending, entry of a final judgment without staying its enforcement would, in the usual case, amount to an abuse of discretion. See 6 Moore's Federal Practice 751, ¶ 54.41[3]. Upon resolution of the counterclaim, the court can offset the amount of the counterclaim against the amount of the main claim. *Fagala v. Morrison,* 146 Ga. App. 377, 378 (246 SE2d 408) (1978).

---

[1]The primary effect of conferring final judgment status on a summary judgment is to enable a party to enforce that judgment. The grant of summary judgment is appealable in any event under CPA § 56 (h) (Code Ann. § 81A-156 (h)). By entering a final judgment under CPA § 54 (b) and staying enforcement of that judgment under CPA § 62 (f), the court places the parties in virtually the same position as if it had merely granted summary judgment and taken no further action. In either case, (1) the grant of summary judgment is appealable and (2) the judgment is not immediately enforceable.