72733. FIDELITY NATIONAL BANK v. REID.
(348 SE2d 913)

BIRDSONG, Presiding Judge.

This is an appeal from summary judgment in favor of the defendant, relieving him of liability on a guaranty executed ancillary to a note made by a defaulting third party.

Fidelity National Bank, the appellant, made a $29,000 loan to A-1 Trucking and Rigging Company. In order to hasten the loan process, the appellee, Robert Reid, agreed to guarantee the note since the principal amount was to be used by A-1 to pay off insurance premiums on policies issued by Reid's insurance company.

A-1 sought additional loans from Fidelity after the $29,000 loan was repaid. Prior to this, Reid consulted with Fidelity's loan officer to

determine if his guaranty would be needed for the subsequent loans. At that time, the loan officer assured Reid that the guaranty was no longer effective and that subsequent loans to A-1 would be made based upon A-1's established credit record and certain collateral furnished by A-1. Fidelity then continued to make loans to A-1.

Some time later, A-1 defaulted on one of the subsequent loans. Fidelity now seeks to collect $29,000 from Reid based upon the guaranty executed to protect the fully satisfied initial loan.

The guaranty reads, in pertinent part: "This guaranty shall be continuing, absolute and unconditional and shall remain in full force and effect as to the undersigned subject to discontinuance of this guaranty as to . . . the undersigned only as follows: . . . [T]he undersigned . . . may give written notice to the bank of discontinuance of this guaranty as to the undersigned. . . . [N]o such notice shall be effective in any respect until it is actually received by the bank and no such notice shall affect or impair the obligations hereunder of the undersigned . . . with respect to any liabilities existing at the date of receipt of such notice by the bank. . . ."

Fidelity claims that Reid is bound by the four corners of this guaranty and therefore the guaranty, through the future advances clause, supra, remains effective since written notice was not received by Fidelity prior to approval of the subsequently executed loan on which A-1 defaulted. The appellee, Reid, claims that either the conversation with the loan officer constituted notice to the bank, or, in the alternative, the bank is estopped since Reid relied upon the loan officer's statement that the guaranty expired upon the satisfaction of the underlying indebtedness and further action was not necessary. *Held*:

1. We must first identify the applicable rules of law in this action. Normally, a guaranty executed ancillary to a note is governed by Article 3 of the Uniform Commercial Code, the applicable law of negotiable instruments. Under Article 3 of the Commercial Code, an oral cancellation of a guaranty cannot alone prove renunciation of a guaranty which is made a part of an instrument. See *Metro Nat. Bank v. Roe*, 37 UCC Rep. 1183 (Colo. Ct. App. 1983). In *Everton v. Blair*, 23 UCC Rep. 1228, the Idaho Supreme Court held that a renunciation must be in writing, or by mutilation or surrender of the instrument. That court also held that the methods of cancellation and renunciation provided in UCC § 3-605 (OCGA § 11-3-605) are exclusive. These rules are applicable in Georgia. The language utilized in this wraparound guaranty is consistent with these principles. But the guaranty also is consistent with a guarantee of the one indebtedness and extensions of that indebtedness. The guarantor was authorized to cancel the guaranty in writing but that had no impact on the debt so long as it was unpaid.

In the present case, there was no remaining debt on A-1's first note as it had been fully satisfied. A-1 had not yet incurred any additional liability to Fidelity at the time of the oral renunciation by the loan officer. The payment by A-1 had discharged A-1 and Reid of any liability on the initial note. OCGA § 11-3-603. Therefore, at that time, any guaranty ancillary to a fully paid note would generally be deemed *nudum pactum ex quo non oritur actio*, having no worth or actionable value. Article 3 does not govern guaranties which are not ancillary to notes or other actionable negotiable instruments. Guaranties alone are not negotiable instruments since they are *conditional* promises to pay a sum certain. See OCGA §§ 11-3-104 (1) (b); 11-3-105 (2) (a).

By virtue of the future advances clause in this particular guaranty, the execution of a subsequent note would simply breathe life back into the guaranty, once again subjecting it to the rules of Article 3. However, during the period between the payment of the initial loan and the execution of a subsequent note, this guaranty was simply an inchoately enforceable contract subject to a condition precedent, with no rights arising until Fidelity made another loan to A-1. See *Charter Investment &c. Co. v. Urban Medical Svcs.*, 136 Ga. App. 297, 299 (5) (220 SE2d 784).

Such was the status of the guaranty when the loan officer indicated that the guaranty had no effect and would not be enforced in the event of any defaults on future loans. Under contract law, unlike the laws under Article 3 of the Commercial Code, "[o]ne party to a contract may consent to rescission by the other party," *Bradfield v. Gardner*, 150 Ga. App. 49, 50 (256 SE2d 655), "and the contract may be rescinded by conduct as well as by words." *Holloway v. Giddens*, 239 Ga. 195, 197 (236 SE2d 491). Therefore, the guaranty may be properly rescinded by the remarks of the loan officer to which Reid consented.

2. This analysis takes into consideration the fact that a written guaranty does not contemplate such a method of rescission and specifically this guarantee places the burden on the guarantor to discontinue the effect of the guaranty. In this case, the rescission is in itself a contract and depends on a mutual understanding and agreement. *Dupree v. United States*, 125 FSupp. 122 (D.C. Ga. 1954).

This separate oral contract is sworn to by Reid, A-1's business consultant, and Fidelity's loan officer. These parties are in agreement as to their intentions at the time the loan officer rescinded the guaranty. " 'The construction of a contract is a question of law for the [trial] court. . . .' 'The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction.' " *Village Enterprises v. Ga. R. Bank &c. Co.*, 117 Ga.

App. 773, 774 (161 SE2d 901); see also *Henderson Mill, Ltd. v. McConnell*, 237 Ga. 807, 809 (229 SE2d 660). Accordingly, the trial court properly entered summary judgment for defendant Reid.

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 12, 1986 —
REHEARING DENIED SEPTEMBER 29, 1986 

*James J. Brissette*, for appellant.
*Herbert D. Shellhouse*, for appellee.