## 77441. YARBROUGH et al. v. MAGBEE BROTHERS LUMBER & SUPPLY COMPANY, INC.

### (375 SE2d 471)

McMURRAY, Presiding Judge.

Plaintiff Magbee Bros. Lumber & Supply Company, Inc., brought suit against H. Cole Yarbrough and Gregory E. Stuhler. The complaint alleged that North River Builders, Inc. ("North River") executed and delivered a nonnegotiable promissory note payable to plaintiff in the principal amount of $62,500; that North River defaulted under the terms of the note; that the note was accelerated pursuant to its terms; and that North River failed to pay the balance due and owing under the note. It was also alleged that defendants executed a guaranty whereby each defendant guaranteed 50 percent of the obligations which North River incurred pursuant to the note; and that each defendant was liable to plaintiff in the amount of $14,843.75 principal, plus accrued interest and attorney fees. Copies of the nonnegotiable promissory note and the guaranty were attached to the complaint as exhibits.

In pertinent part, the guaranty read: "To induce you to enter into the foregoing Non-Negotiable Promissory Note ('Note') with North River Builders, Inc. . . . and in consideration thereof and of any loans, advances or financial accommodations heretofore or hereafter granted by you to or for the account of North River, whether pursuant to said Note or otherwise, and provided always that each Guarantor shall only be liable to the extent of fifty (50%) percent of the total payment, obligations, demands or liabilities guaranteed herein, each of the undersigned Guarantors guarantees; (a) the payment to you of all sums which may be presently due and owing to you from North River, whether under said Note or otherwise, and also guarantees the due performance by North River of all its obligations under said Note, any amendment or supplement thereto and under all other present and future contracts and agreements with you; and (b) to indemnify you and hold you harmless against all obligations, demands and liabilities, by whomsoever asserted, and against all losses in any

way suffered, incurred or paid by you as a result of or in any way arising out of, or following, or consequential to transactions with North River, whether under said Note or otherwise . . . and in addition, for attorneys' fees equal to 15% of the unpaid indebtedness and obligations of North River to you, if any claim hereunder or under any instrument or guaranty is referred to an attorney for collection. Each Guarantor also agrees that the liability of each Guarantor hereunder may be enforced without requiring you first to resort to any other right, remedy or security . . ."

The guaranty was signed by each defendant. The words "collection guaranteed" were written by hand above each defendant's signature.

Defendants were served with the complaint and summons. According to the sheriff's return of service, defendant Stuhler was also served with plaintiff's first request for admissions. Pursuant to the request, defendant Stuhler was asked to admit that copies of the nonnegotiable note and guaranty were true, genuine and correct. He was also asked to admit, inter alia, that he was liable to plaintiff for 50 percent of North River's indebtedness, to wit: $14,843.75 plus accrued interest through September 28, 1987, in the amount of $664.31, plus daily interest accruing thereon from September 28, 1987, in the amount of $4.92 per day and attorney fees equal to 15 percent of North River's debt.

Defendants answered the complaint separately, denying any indebtedness to plaintiff. Thereafter, plaintiff moved for summary judgment against each defendant.

In the meantime, defendant Yarbrough was served with plaintiff's request for admissions. Pursuant to the request, defendant Yarbrough was asked to admit that copies of the nonnegotiable note and guaranty were genuine and that he, too, was liable to plaintiff for 50 percent of North River's indebtedness.

Neither one of the defendants responded to plaintiff's requests for admissions. On January 8, 1988, however, defendant Stuhler moved for an extension of time within which to file answers to the request addressed to him. In support of his motion, defendant Stuhler submitted an affidavit in which he averred that he is an attorney and that he represented himself and defendant Yarbrough in this action; that he was served with the complaint on October 7, 1987; and that a request for admission was not attached to the complaint. He averred further that on December 4, 1987, he received by mail the request for admissions directed to defendant Yarbrough and on December 7, 1987, he received by mail plaintiff's summary judgment motion; that he telephoned plaintiff's attorney and told him that he did not receive the request for admissions to which reference was made in the summary judgment motion; that plaintiff's attorney said he would not

grant an extension of time to answer the requests; that he never received the request which was addressed to him; and that he was prepared to file answers to the request based on the assumption that the request addressed to him was the same as the request addressed to defendant Yarbrough.

Defendant Stuhler responded to plaintiff's motion for summary judgment on January 8, 1988. Therein, defendant Stuhler argued that he should be granted additional time to respond to the request for admissions. In this regard, defendant Stuhler made reference to his motions for extension of time and the affidavit which accompanied it. Defendant Yarbrough did not at any time respond to plaintiff's summary judgment motion.

On January 29, 1988, defendant Stuhler moved to dismiss plaintiff's complaint. In a brief accompanying the motion, it was argued that plaintiff was not entitled to bring this suit without first obtaining judgment against North River and attempting to have the judgment satisfied. In this regard, defendant Stuhler took the position that the handwritten words "collection guaranteed" appearing above his signature on the guaranty required plaintiff to enforce its rights against North River before suing him.

The trial court did not rule expressly upon defendant Stuhler's motion for extension of time within which to respond to plaintiff's request for admissions. Nor did the court rule expressly upon defendant Stuhler's motion to dismiss. The court did, however, grant plaintiff's motions for summary judgment against each defendant.

Thereafter, defendants filed a motion to set aside the judgments entered against them. The motion was denied.

Defendants timely filed a notice of appeal within 30 days of the orders granting plaintiff's summary judgment motions. *Held*:

1. The absence of timely answers to a request for admissions has the effect of establishing conclusively the facts set forth in the request. OCGA § 9-11-36. In the case sub judice, the requests for admissions addressed to defendants covered every conceivable issue. Defendants admitted that they were liable to plaintiff for North River's indebtedness. And the exact amount of each defendant's liability was specified with respect to the principal indebtedness, interest and attorney fees. Accordingly, summary judgment was appropriate since no genuine issue of material fact remained. *Custom Farm Svcs. v. Faulk*, 130 Ga. App. 583 (203 SE2d 912).

2. Defendant Stuhler contends the trial court erred in granting summary judgment against him, arguing he should have been permitted to respond to the request for admissions. We disagree.

OCGA § 9-11-36 (b) provides: "Any matter admitted under this Code section is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. Subject to Code

Section 9-11-16 governing amendment of a pretrial order, the court may permit withdrawal or amendment *when the presentation of the merits of the action will be subserved thereby* and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining [the] action or defense on the merits." (Emphasis supplied.) Thus, any attempt to withdraw or amend admissions must be accompanied by a showing that the merits of the case will be subserved.

Defendant Stuhler would have us rule that the merits of the action would be subserved by permitting him to respond to the request for admissions.[1] In this regard, relying upon OCGA § 11-3-416 (2), he asserts that the words "collection guaranteed" create an issue as to whether plaintiff was required to pursue its remedies against North River before bringing suit on the guaranty. We cannot accept this assertion.

Article 3 of the Uniform Commercial Code concerns commercial paper. In pertinent part, it provides: " 'Collection guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor, but only after the holder has reduced his claim against the maker or acceptor to judgment and execution has been returned unsatisfied, or after the maker or acceptor has become insolvent or it is otherwise apparent that it is useless to proceed against him." OCGA § 11-3-416 (2). The term "instrument" used therein "means a negotiable instrument." OCGA § 11-3-102 (1) (e). Thus, the term "collection guaranteed" takes effect in the realm of negotiable instruments and commercial paper. *Cities Svc. Oil Co. v. Collins*, 121 Ga. App. 38 (172 SE2d 653). It has no bearing upon a contract of guaranty which is ancillary to a nonnegotiable note. *Fidelity Nat. Bank v. Reid*, 180 Ga. App. 428, 429 (1) (348 SE2d 913).

In the case sub judice, the words "collection guaranteed" were added to signatures which were placed on a contract of guaranty which pertained to a nonnegotiable note. They were not affixed to commercial paper or a negotiable instrument. Thus, the words "collection guaranteed" relied upon by defendant Stuhler do not affect the contract of guaranty. See *Cities Svc. Oil Co. v. Collins*, 121 Ga. App. 38, supra; *Fidelity Nat. Bank v. Reid*, 180 Ga. App. 428, supra.

It follows that the merits of the action would not be subserved by permitting defendant Stuhler to respond to the request for admissions. The trial court did not err in failing to permit defendant Stuhler to respond to the request.

---

[1] We treat defendant Stuhler's motion for an extension of time within which to file answers to the request for admissions as a motion to withdraw admissions pursuant to OCGA § 9-11-36 (b). See *West v. Milner Enterprises*, 162 Ga. App. 667, 668, fn. 1 (292 SE2d 538).

3. Defendants contend the trial court erred in denying their motions to set aside the judgments against them. In this regard, they assert that the words "collection guaranteed" appearing on the guaranty constitute a nonamendable defect on the face of the record. See OCGA § 9-11-60 (d). This assertion fails for the simple reason that, as noted in Division 2, the words "collection guaranteed" do not alter the terms of a contract of guaranty which is ancillary to a nonnegotiable note. Besides, any defect on the face of the record was cured by the judgment predicated upon defendants' admissions.

4. Plaintiff's motion to assess damages for a frivolous appeal is denied. Although we find no merit in defendants' enumerations of error, we do not conclude that defendants' enumerations are so specious for us to conclude that the appeal was taken for delay only. See *Crucet v. Bovis, Kyle & Burch*, 180 Ga. App. 765, 766 (6) (350 SE2d 322).

*Judgment affirmed. Pope and Benham, JJ., concur.*

DECIDED OCTOBER 20, 1988 —
REHEARING DENIED NOVEMBER 16, 1988.

*Richard A. Coleman,* for appellants.
*Cook, Noell, Tolley & Aldridge, Randall D. Quintrell,* for appellee.