## A11A1059. WEST v. DIDURO et al.
### (718 SE2d 815)

MIKELL, Judge.

Shelley West sold her chiropractic practice to Matthew Diduro and Christopher Bragg (hereinafter collectively "Buyers"). Buyers subsequently defaulted on the promissory note given in connection with the sale, and West sued them on the note, for breach of contract and for other claims. Buyers counterclaimed, and both parties filed motions for partial summary judgment. The trial court denied West's motion and granted Buyers' motion in part. Following a jury trial, judgment was entered in favor of West on her claim for conversion of certain accounts receivable; and in favor of Buyers on certain counterclaims and for attorney fees on Buyers' counterclaim for breach of contract. West appeals from the trial court's orders on the parties' motions for partial summary judgment and from the judgment entered following the jury trial. For the reasons set forth below, we affirm in part and reverse in part, and we remand for further proceedings in accordance with this opinion.

As to West's challenge to the trial court's adverse rulings on summary judgment, we apply the following standard of review:

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record reflects that West operated a chiropractic practice incorporated as Healthsource Chiropractic of Johns Creek P.C. ("Healthsource PC"), of which she was sole owner. On March 26, 2008, West sold this practice to Buyers for $185,000, pursuant to a Purchase Agreement executed by the parties that day. The Purchase Agreement provided that $135,000 of the purchase price was to be paid in cash, with the remaining $50,000 to be financed by a

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

promissory note from Buyers to West. Upon execution of the Purchase Agreement, Buyers gave West a promissory note in the amount of $50,000 (the "Note"); however, Buyers tendered at that time only $125,000 of the $135,000 remaining on the purchase price. Buyers apparently made an oral promise to pay the $10,000 shortfall at some later time. As contemplated by the Purchase Agreement, West executed a Non-Compete Agreement in favor of Buyers. When the parties executed the Purchase Agreement, Buyers did not request any stock certificates in Healthsource PC, and no stock certificates were transferred at that time. After this transaction, Buyers took over the operation of the practice but failed to make payments under the Note, which contained an acceleration clause. Buyers also failed to pay the $10,000 shortfall on the purchase price.

Two months after the sale of her business, West filed suit against Buyers, asserting claims for breach of contract based on Buyers' default under the Note, failure to pay over certain accounts receivable collections, and failure to pay the $10,000 remaining on the purchase price; conversion, based on Buyers' alleged fraudulent negotiation of checks made out to West; fraud, based on Buyers' use of tax identification numbers and "approved preferred provider" status, which West alleged belonged to either Healthsource PC or West, in connection with Buyers' billing various insurance companies; and assault and battery against Diduro, based on an incident alleged to have occurred on April 18, 2008. On July 21, 2008, Buyers answered and asserted counterclaims against West, based on breach of contract, conversion, fraud, defamation, false light, tortious interference with contract, and intentional infliction of emotional distress. On December 29, 2008, Buyers amended their answer to assert failure of consideration as a defense to West's claim on the Note, based on West's failure to convey the stock in Healthsource PC when the Purchase Agreement was executed.

West filed a motion for partial summary judgment on the $50,000 Note, which the trial court denied in its order entered April 10, 2009 (the "April 2009 Order"), on the ground that a genuine issue of material fact existed as to whether the Note was void for lack of consideration.

Buyers also moved for partial summary judgment. Their motion was granted in part and denied in part by the trial court's order entered May 6, 2010 (the "May 2010 Order"). The trial court ruled that the Purchase Agreement unambiguously contemplated a stock sale, as well as an asset sale; that the consideration for the sale was the stock in Healthsource PC; and that the Buyers had not received any stock in Healthsource PC when the Purchase Agreement was signed. Therefore, the court concluded that the Purchase Agreement, Note, and Non-Compete Agreement "were executed and

delivered without substantial consideration,'' because West had not transferred the Healthsource PC stock certificates to Buyers upon execution of the Purchase Agreement.

In its May 2010 Order, the court granted partial summary judgment to Buyers on the following issues: (1) West's claim for the $50,000 owing under the Note; (2) West's claim for the $10,000 shortfall in the purchase price, on the ground that West breached the Purchase Agreement by conveying a DRX unit used in the practice to a third party a few days before the Purchase Agreement was executed on March 26, 2008; (3) West's claim for conversion of Healthsource PC's accounts receivable collected after March 26, 2008; and (4) West's fraud claim, based on her allegation that Buyers improperly used tax identification numbers and ''approved provider status'' associated with Healthsource PC or West. The trial court also granted summary judgment to Buyers and against West as to their claim that West breached the Purchase Agreement by failing to transfer ownership of the DRX unit. The May 2010 Order denied Buyers' motion for partial summary judgment as to the following issues, thus reserving them for trial: (1) West's claim for conversion of Healthsource PC's pre-March 26, 2008, accounts receivable; (2) West's claim against Diduro for assault and battery; (3) West's claim for punitive damages based on the alleged assault and battery; (4) Buyers' counterclaims against West for defamation and tortious interference with Buyers' business relationships, based on Buyers' allegations that West made derogatory statements to third parties; and (5) Buyers' counterclaim against West based on West's alleged breach of her agreement in the Purchase Agreement ''to create a smooth transition'' of the practice.

The case was then tried before a jury, which awarded West $389 on her claim for conversion of pre-March 26, 2008, accounts receivable, but found against West and in favor of Buyers on West's assault and battery claim. On Buyers' claim against West for breach of contract, the only issues presented to the jury were the amount of damages owed to Buyers for the breach and the amount of attorney fees Buyers were entitled to recover. On this claim, the jury awarded Buyers $0 in damages and $84,983 attorney fees. The jury awarded Buyers $100,000 on Buyers' other counterclaims but awarded no punitive damages against West. West appeals from the adverse orders on summary judgment and from the judgment entered on the jury's verdict.

1. *The April 2009 Order*. In her motion for partial summary judgment, West sought to recover against Buyers on the Note. Buyers responded, asserting that the Note lacked consideration because West had conveyed the DRX unit to a third party before the execution of the Purchase Agreement and because she had removed

certain items from the Healthsource PC offices and she had defamed Buyers after the sale. In its April 2009 Order, the trial court concluded that West was not entitled to judgment on the Note because fact issues remained as to whether it lacked consideration. This ruling was in error, and we reverse.

> It is well established that a plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed. Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense.[2]

There is no dispute that Buyers borrowed $50,000 from West to finance their purchase of her chiropractic practice, this debt being evidenced by the Note; that they signed the Note; and that they failed to make payments under the Note. Therefore, West established a prima facie case and was entitled to judgment as a matter of law, unless Buyers established a valid defense.

Buyers interposed the defense of lack of consideration.[3] However, this defense cannot stand. Contrary to the trial court's ruling, no genuine issue of material fact remained as to whether there was consideration given in exchange for the Note. Abundant evidence in the record showed that, upon execution of the Purchase Agreement, Buyers acquired the chiropractic practice formerly owned and operated by West.

As this Court explained in *Greene v. Johnson*,[4] the party claiming under a contract has the burden of proving a prima facie case to recover thereunder, but the burden of sustaining the defense of total or partial failure of consideration falls on the one asserting the defense.[5] In that case, the seller of an accounting business attempted to recover for the unpaid balance on two promissory notes given in

---

[2] (Citations omitted.) *Newton v. Sibley*, 273 Ga. App. 343 (615 SE2d 185) (2005), citing *Vandegriff v. Hamilton*, 238 Ga. App. 603, 604 (519 SE2d 702) (1999). Accord *Collins v. Regions Bank*, 282 Ga. App. 725, 726 (639 SE2d 626) (2006). See OCGA § 11-3-308 (a), (b).

[3] See *Greene v. Johnson*, 170 Ga. App. 760, 761 (318 SE2d 205) (1984) ("A plea of total or partial failure of consideration is a permissible defense to an action founded upon a contract") (citation and punctuation omitted). Compare *Han v. Han*, 295 Ga. App. 1, 3-4 (2) (670 SE2d 842) (2008) (transfer of payee's interest in real property could not serve as consideration for note, where transfer occurred days before execution of note and payee had no interest in real property when note was executed; note was therefore unenforceable for lack of consideration).

[4] Supra.

[5] Id.

connection with the sale of the business.[6] The purchaser asserted failure of consideration as a defense, based upon evidence that, after the sale, seller had breached her covenant not to compete. However, as in the case before us, the defense of *total* failure of consideration was negated by evidence that the purchaser had received the assets of the business — "furniture, fixtures, machines, equipment, supplies and client files."[7] And where the evidence shows that the failure of consideration "is not total but partial only, the burden devolves upon the defendant to prove the dollar amount of his damages or suffer judgment against him."[8] In the case before us, Buyers have not shown damages in any amount from the alleged failure of consideration.

The Purchase Agreement in the case at bar did not contemplate a closing to take place in the future. Rather, it served as a record or memorandum of what actually occurred at the March 26, 2008, transaction. Although it contained certain promises of future performance, e.g., West's promise "to assist in an orderly transition of the practice," the Purchase Agreement more closely resembled an executed bill of sale for personal property than an executory contract for the sale of a business. It follows that the Purchase Agreement bound West to convey only the assets owned by the practice on March 26, 2008. This Agreement did not restrict, nor was there any other agreement to restrict, her ability to alienate assets *before* that date. Buyers' claim that West's earlier conveyance of the DRX unit somehow breached the not-yet-executed Purchase Agreement thus falls to the ground.

Despite any later quarrels which arose between the parties after the Purchase Agreement was signed, the Note was supported by adequate consideration at the time of its execution, because Buyers took immediate possession of West's business and began operating it as their own. Thus, the trial court erred in denying West's motion for summary judgment against Buyers on West's claim to recover under the Note. West is entitled to immediate judgment on the $50,000 Note pursuant to OCGA § 9-11-54 (b).[9]

2. *The May 2010 Order.* As to the various rulings entered by the trial court in its May 2010 Order and challenged on appeal,[10] we

---

[6] Id. at 760.

[7] Id. at 761.

[8] (Citation and punctuation omitted.) Id.

[9] One reason for the existence and popularity of promissory notes is that collecting on them is quicker and easier than collecting on a claim for breach of contract.

[10] West did not challenge on appeal the trial court's rulings as to her claims for conversion of accounts receivable, for assault and battery, and for punitive damages on the assault and battery claim.

affirm in part and reverse in part.

(a) The trial court concluded that Buyers were entitled to judgment as a matter of law on West's claim for recovery under the Note, on the ground that (1) the Purchase Agreement was a contract for the sale of the shares of stock in West's professional corporation; (2) West had failed to deliver this stock to Buyers; and (3) therefore, there was a failure of consideration for the Note. This ruling was in error, and we reverse.

In the first place, as discussed in Division 1 above, it is clear that the Note was not "executed and delivered without substantial consideration," contrary to the trial court's May 2010 ruling. Further, whether the sale was intended to convey assets or stock, Buyers have not proven damages resulting from West's failure to transfer Healthsource PC stock certificates.

We cannot agree with the trial court that the Purchase Agreement contemplated a sale of stock, rather than an asset sale. Although the Non-Compete Agreement signed by West recites that "Buyers are acquiring all of the outstanding corporate stock held by [West] in [Healthsource PC]," this preamble is mere surplusage.

Shares of stock in a corporation are, of course, not an asset of the corporation; rather, they are an asset of the person or entity that owns the stock. Therefore, West's promise to transfer assets of Healthsource PC did not imply a promise to transfer her stock in the corporation.[11] And careful perusal of the Purchase Agreement and the Non-Compete Agreement reveals no promise by West to give, furnish, convey, or assign to Buyers any shares of her stock in Healthsource PC. Indeed, Buyers must have been satisfied with whatever West conveyed to them on March 26, 2008, because in exchange they executed a Note for $50,000, as well as paying $125,000 in additional funds, plus giving an oral promise to pay the remaining $10,000 at an unspecified future time. It was only long after West sued Buyers on the Note that they asserted she was in breach for failure to convey stock certificates in Healthsource PC at the time the Purchase Agreement was signed.

(b) The trial court granted partial summary judgment to Buyers on West's claim for the $10,000 shortfall in the purchase price, reasoning that West failed to convey the DRX unit upon execution of the Purchase Agreement. This ruling was in error, and we reverse. As explained in Division 1 above, West's conveyance of the DRX unit to a third party prior to execution of the Purchase Agreement did not

---

[11] Although West, the seller named in the Purchase Agreement, was not the legal owner of Healthsource PC's assets, as sole shareholder she had the ability to cause the corporate owner to convey the assets to Buyers.

breach West's obligations under the Purchase Agreement. Thus, West's claim for the unpaid portion of the purchase price should have been reserved for trial.[12]

(c) The trial court also erred in summarily adjudicating in favor of Buyers their claim that West breached the Purchase Agreement by failing to transfer ownership of the DRX unit. Neither the Purchase Agreement nor any of the other agreements between the parties imposed any obligation on West to transfer ownership of the DRX unit to Buyers, and the trial court erred in finding otherwise. The DRX unit is not listed on the Equipment List attached to the Purchase Agreement. The Purchase Agreement's only reference to the DRX unit is found in the recitation concerning purchase price, which requires "$50,000 [of the purchase price] to be used by seller to pay off the existing lease for the DRX unit." Not a scintilla of evidence in the record indicates that West failed to pay off the indebtedness on the DRX unit.

To be sure, the Purchase Agreement required West to transfer to Buyers all assets of Healthsource PC. But this obligation applied to assets actually owned by the corporation on March 26, 2008, when the Purchase Agreement was signed. By that date, West had already conveyed the DRX unit to a third party, as was her right. If there had been a signed agreement to purchase, with a closing date at a time in the future, then transfers of assets in the interval between the agreement to purchase and the closing might have constituted a breach of contract. But in the case before us, the Purchase Agreement is the complete and entire agreement between the parties, by reason of its merger clause; and as discussed above, this Agreement does not require West to transfer the DRX unit to Buyers. It requires only that West transfer equipment and assets that the business owned on March 26, 2008. Parol evidence of agreements between the parties regarding the DRX unit is not of the slightest probative value in interpreting the Purchase Agreement, which the trial court termed an unambiguous contract.[13] Accordingly, on the remand of this case, the trial court should enter partial summary judgment for West on this issue.

(d) We affirm the trial court's grant of summary judgment in

---

[12] Buyers' oral promise to pay the $10,000 shortfall at an unspecified future time, if proved at trial, would be analogous to a promissory note without any specified due date. The absence of a maturity date in a promissory note would not render the note uncertain and vague, but would merely create an obligation due on demand. *Mock v. Canterbury Realty Co.*, 152 Ga. App. 872, 881 (2) (264 SE2d 489) (1980) (whole court). See also OCGA § 11-3-108 (a) (ii) ("A promise or order is 'payable on demand' if it . . . does not state any time of payment").

[13] See *Mock*, supra (parol evidence is without probative value to vary terms of an unambiguous written contract). Accord *Paige v. Jurgensen*, 204 Ga. App. 524, 525 (1) (419 SE2d 722) (1992).

favor of Buyers as to West's fraud claims. West alleged that Buyers improperly used tax identification numbers and "approved provider status" associated with Healthsource PC or West in billing for services. To the extent that these items belonged to Healthsource PC and not West personally, West is not the proper party to bring an action for their misuse. Further, under the Purchase Agreement, "all tangible and intangible assets" of the corporation were transferred to Buyers. Therefore, they had the right to use the items at issue.

West asserts that "approved provider status" is based on "credentialing" by the insurance companies and applies to her personally and not to other chiropractors. Even if she is completely correct about this, the harm being done is to the insurance companies, and it is up to them — not West — to seek redress if they object to Buyers' use of West's "approved provider status."

(e) The trial court correctly denied Buyers' motion for partial summary judgment on their counterclaims against West for defamation and tortious interference with business relations, and these claims were properly reserved for trial.

(f) The trial court erred in reserving for trial Buyers' claim that West had breached, in the trial court's words, "the agreement to create a smooth transition." There was no such agreement. Under the Purchase Agreement, West actually agreed to "remain at the practice without compensation on an as needed basis not to exceed thirty (30) calendar days following the sale of the practice *to assist in an orderly transition of the practice.*"[14] West's promise "to assist in an orderly transition" is different from a promise, as stated in the trial court's order, "to create a smooth transition." Diduro asserted by affidavit that upon the sale of a chiropractic practice, it was customary for the selling chiropractor to continue to see patients "during the first few weeks" and to introduce them to the new doctor. Such an alleged custom among chiropractors is, of course, irrelevant to a strict legal reading of the Purchase Agreement. Diduro's further averments that, after West sold the practice, she cancelled her malpractice insurance and occasionally came to the office in inappropriate dress, did not constitute proof that she breached her agreement to "remain at the practice . . . on an as needed basis." The trial court erred in failing to enter judgment sua sponte in favor of West and against Buyers on this claim, and we direct the trial court to enter such an order on remand.

In summary, the only issues properly remaining for determination at trial are West's claim for the $10,000 shortfall in the purchase

---

[14] (Emphasis supplied.)

price;[15] Buyers' claims against West for defamation and tortious interference with business relationships; and Buyers' claim that West breached the Non-Compete Agreement by making disparaging remarks about the new owners to several former patients of the practice.

3. *The trial.* Because the trial court erred (in part) in its rulings on the parties' motions for partial summary judgment, the instructions to the jury given at trial and the verdict form provided to the jury[16] also constituted legal error. For example, the jury was instructed that West had breached the contract. That claim remains for jury determination, but only as to West's possible breach of the Non-Compete Agreement. Because the instructions to the jury and the jury's verdict form were erroneous, we order a new trial as to the remaining issues. Those issues are enumerated above. In the meanwhile, as soon as the remittitur is received, the trial court will grant judgment to West on the $50,000 Note and make the findings required by OCGA § 9-11-54 (b).

*Judgment affirmed in part and reversed in part, and case remanded with direction. Phipps, P. J., concurs. McFadden, J., concurs in judgment only.*

DECIDED OCTOBER 18, 2011 —
RECONSIDERATION DENIED NOVEMBER 16, 2011 —

*Albert L. Norton, Jr.,* for appellant.
*John L. G. Herbert, Jr.,* for appellees.

---

[15] West's claim for conversion of accounts receivable and her claim for assault and battery and punitive damages thereon are no longer pending and will not be heard at the retrial of this case. See footnote 10, supra.

[16] The verdict form read in part as follows: "As the [trial court] has determined that [West] has breached the contract, and that reasonable attorney's fees are owed to [Buyers], we, the jury, find that [Buyers] are entitled to recover damages for the breach in the amount of $_____ and reasonable attorneys' fees against [West] in the amount of $_____." The jury filled in the first blank "$0.00" and the second "$84,983.00."